THE NORTHWESTERN MANUFACTURING COMPANY v. FITZWILLIAM H. CHAMBERS, A CIRCUIT JUDGE FOR WAYNE COUNTY.

*Constitutional law—Oleomargarine—Titles of statutes—Definitions—Judicial knowledge.*

1. Act 186 of 1885 " to prevent deception in the manufacture and sale of dairy products, and to preserve the public health," is unconstitutional in going beyond the title (1) by making such manufacture and sale a crime ; (2) by providing that the State shall purchase the manufacturing machinery ; (3) by requiring the Board of State Auditors to allow the sum judicially decreed to be paid for such machinery, and thereby interfering with its constitutional prerogative to pass on any claims against the State.

2. The Legislature cannot extend the scope of the title of an act by so defining it in the body of the act as to make it cover more than the natural and proper meaning of the words will warrant.

3. Neither court nor Legislature can have judicial knowledge of the merits or defects of oleomargarine so as to be able to declare its hygienic value.

4. Whether the use and manufacture of oleomargarine can be prohibited by the Legislature—Q.

5. Courts deal with legal questions, and not with abstract principles of public economy.

MANDAMUS. Submitted Oct. 27.—Denied Nov. 4.

*George W. Moore* for relator.

*George F. Robison* and *F. A. Baker* for respondent.

CAMPBELL, J.  Relator, being a corporation engaged in making oleomargarine and butterine in the city of Detroit, proceeded, on the taking effect of Act No. 186 of the Public Acts of 1885, to surrender to the sheriff of Wayne county its machinery and apparatus and outfit, and applied to respondent under section 9 of the statute, to have its value assessed by a jury, for the purpose of getting pay for it from the State.  The judge refused the application, on the ground that he did not consider the act valid.  Application is made to us for a mandamus to compel him to proceed with the assessment.  We intimated on the argument that we did not see our way clear to granting such a writ.  The question depends on the legal efficacy of the statute.

Its title is "An act to prevent deception in the manufacture and sale of dairy products, and to preserve the public health."  The first section punishes as guilty of a misdemeanor any person who shall manufacture, sell, or ship "into this State oleomargarine or butterine or any articles in semblance of butter, and not the legitimate product of the dairy, and not made exclusively of milk or cream."  Whether this would exclude butter made with salt, we do not find it necessary on this hearing to determine.

The second and third sections make it punishable as a misdemeanor, with heavy punishments not differing essentially from those in the first section, if any one shall render or manufacture out of "any animal fat, or animal or vegetable oils, not produced from unadulterated milk or cream from the same, any article or product in imitation or semblance of, or designed to take the place of natural butter," or "mix, compound with, or add to, milk, cream, or butter, any acids or other deleterious substance, or any animal fats, or animal or vegetable oils, not produced from milk or cream, with design or intent to render, make, or produce any article or substance, or any human food, in imitation or semblance of natural butter," or sell, keep or offer for sale any such article, whether made here or elsewhere.

The fourth section begins with similar restrictions against doing any of these things with intent to sell them as genuine

butter, but proceeds to make the possession of any of them conclusive evidence of such a design. The fifth and sixth contain some auxiliary provisions. The seventh seems to be designed to be a vindication of the statute and its purpose, and is in these words: "This act, and each section thereof, is declared to be enacted to prevent deception in the sale of dairy products, and to preserve the public health, which is endangered by the manufacture, sale, or use of the articles or substances herein regulated or prohibited."

The eighth section repeals all laws inconsistent with this. The ninth section provides that all persons and companies having money or property invested in machinery, apparatus or stock used in connection with the manufacture of oleomargarine or any butter substitute, may surrender the property (except land and buildings) to the sheriff, whereupon an inventory is to be made, and the owners are to commence a suit against the State in the circuit court of the county for its value, to be assessed by jury. The prosecuting attorney or Attorney General may appear and defend. The jury are to assess the value on evidence, and judgment is to be rendered against the State, and execution issued against the State, to be satisfied, as far as possible, by sale of the property, and the balance is required to be allowed by the State Auditors, who are required to certify it to the Auditor General, who is required to issue his warrant on the Treasurer, and the Treasurer is required to pay it.

We are not called upon or qualified by any judicial knowledge which we possess to determine the merits or defects of the well-known substances which this statute was intended to suppress. We cannot, and the Legislature cannot, decide with any authority whether they are of hygienic value or not. That they may be lawfully made and lawfully used, unless there is some valid law to the contrary, is beyond doubt. Whether the Legislature can absolutely prevent their use or manufacture would be an interesting inquiry if this record presented it. But in our opinion it does not present it. The purpose of the statute, so far as it is lawful, must be determined by its title, and it is not competent to

use one title and explain in the body of the act that it means something else. The constitutional rule requiring the title to contain the object of the act would be a farce if there were any power in the Legislature to give new meanings to language. Section 7 is nothing more nor less than such an attempt at stretching words into an unnatural sense, and it is nugatory.

From first to last this statute is confined to what is an absolute and unqualified prohibition as a crime of any making or disposition of the articles within the State, as well as an attempted prohibition against persons in other states or foreign countries from making shipments hither. And section 9 is an attempt to make the State pay for the plant of any persons engaged in the manufacture, by subjecting it to a summary suit in a local court, subjecting its property to execution, and compelling the only constitutional body authorized to allow claims against the State to become the mere register of the circuit court's orders and transmit them to the Auditor General without inquiry. In this respect the statute is certainly remarkable.

It is plain that without this section the rest of the law could not have been passed. It must all stand or fall together. That such a peculiar provision should lurk under such a title as that of this act could never be expected by any one reading the title, and it is hardly credible that it could have been so understood by the great body of legislators. But foreign as it is, it is not much more so than the rest of the act.

The title covers nothing but deception in the " manufacture and sale of dairy products." If the addition of the words " and to preserve the public health " was meant to include anything further, it would render the title double and thus avoid the whole statute for duplicity. It could only stand as indicating the reason for preventing the deception mentioned, and would, in that point of view, rather narrow than enlarge the purpose, by confining it to unwholesome articles, which all of these articles cannot possibly be.

All that could be done under such a title would be to prohibit

and prevent the sale of such articles under false pretenses, as being pure dairy products. Such a prohibition would be no more than adding a new specified deception to the list of punishable false pretenses. And such a law would reach all the mischief aimed at by the title to this statute, and probably all of the mischief that really exists. There is no difficulty in reaching frauds and the use of unsound and dangerous products in other ways. But, whatever authority the law-making power possesses, the Constitution will not permit Legislature or citizens to be misled by embodying in any statute provisions which are not indicated by its title, to which all have a right to look for guidance in their searches after the law.

The peculiar phraseology of this act would seem to indicate that it was drawn up somewhere else, and it may possibly have been borrowed from some state where there is no requirement that titles shall be veracious indexes to legislation. Our own legislative bodies have not been trained in that way, and such is not our law.

It would be of no use to enter upon any discussion of the principles of public economy which were somewhat dwelt on upon the presentation of the case. Our proper functions confine us to legal questions.

The mandamus is refused.

The other Justices concurred.