## OTTAWAY *v.* GUTMAN.

1. APPEAL AND ERROR—SUFFICIENCY OF PLAINTIFF'S TESTIMONY—DIRECTED VERDICT—QUESTIONS REVIEWABLE.

   On appeal from a directed verdict for defendant, the question as to whether plaintiff's testimony is sufficiently convincing to support a verdict is not before the court.

2. NEGLIGENCE—PERSONAL INJURIES—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

   In an action for personal injuries caused by defendant's automobile to plaintiff when it backed upon him and struck him as he was crossing defendant's private driveway on the sidewalk on a public street, his testimony that he looked and did not see any automobile coming, although the day was clear, his eyesight and hearing were good, there were no obstructions in the way, and the garage was 92 feet from the sidewalk, *held*, although improbable, to present a question of fact for the jury.

3. SAME—DIRECTED VERDICT.

   That plaintiff looked in the direction of the automobile so indifferently as not to see it coming, did not make him guilty of contributory negligence, as a matter of law, nor does the improbability of his testimony produce such result.

   BIRD, C. J., and BROOKE, J., dissenting.

Error to Wayne; Webster (Clyde I.), J. Submitted June 4, 1919. (Docket No. 41.) Decided October 6, 1919.

Case by James Ottaway against William Gutman for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Lau, Edwards, Eyster & French,* for appellant.

*Schmalzriedt & Toms,* for appellee.

BIRD, C. J. (*dissenting*). While walking in a westerly direction on the north side of Leicester court, in the city of Detroit, plaintiff, an elderly man, was knocked down by defendant's automobile, which, at the time, was being backed out of his yard, by his son. Plaintiff testified that as he was approaching the driveway he looked in the direction of the garage and driveway but saw nothing of the automobile until it backed against him, that it knocked him down and broke his hip and resulted in making his left leg considerably shorter than his right one.

At the conclusion of plaintiff's testimony the trial court directed a verdict for defendant for the reason that plaintiff's own testimony showed that he was guilty of contributory negligence. Plaintiff argues that that question was one for the jury. Plaintiff testified, upon direct examination, as follows:

"As I approached along Leicester court, there was a vacant lot near the place where this accident occurred, next to Mr. Gutman's house. There was nothing between the house and the vacant lot that I saw. The garage set back. There is a driveway running up to the garage from the sidewalk. I was crossing that driveway on the sidewalk. I was walking right along.

"Q. What were you doing?

"A. I was looking. I kept looking and looking to see if there was anything, and I didn't see nothing, and I went across and this struck me. I saw something black and the car hit me.

"Q. You looked to see whether or not anything was coming out of the driveway as you approached?

"A. I looked and looked all the way along—always looked.

"*Q.* Then when did you first see the car?

"*A.* I did not see it. I saw something black and it struck me. The next time I looked, then at the moment I was struck I saw the car, not before. I don't know what part of the car hit me. It was the front end or the back end of the car hit me. Yes, the back end. It knocked me down."

He further testified, upon cross-examination:

"As I walked down Leicester court I knew that this driveway was there. I had seen it before. I could not tell how wide the lot is just east of Mr. Gutman's house. I never measured it. There is a difference in lots. The house that is next east of Mr. Gutman's sets back from the sidewalk a short distance. It was between 8 and 9 o'clock in the morning, broad daylight. My hearing was good then.

"*Q.* As you came along Leicester court this morning, did you look up this driveway to see whether there was an automobile coming?

"*A.* Yes, sir.

"*Q.* You recall distinctly that you looked?

"*A.* Yes, sir.

"*Q.* Did you see anything?

"*A.* No, sir.

"*Q.* You could see clear to the garage?

"*A.* Yes, sir.

"*Q.* When you were the whole width of the lot, whatever it is, that distance away, you could see clear to the driveway?

"*A.* Certainly.

"*Q.* Now, you looked and did not see anything?

"*A.* Yes, sir.

"*Q.* Then what did you do, after you looked and saw nothing?

"*A.* Why, I kept walking right along.

"*Q.* Started walking right along, and you walked the width of that lot; did you look again?

"*A.* I looked all the way across.

"*Q.* Then you looked all the way, as you walked across that vacant lot, you were looking back at the garage or at the driveway?

"*A.* I was looking that way; I don't know as I was looking at the garage; I was looking that way.

"*Q.* So that you could have seen any automobile which was coming down that driveway?

"*A.* Certainly.

"*Q.* Now, as you got to the driveway, let's just suppose this is a vacant lot (indicating). Now, I am walking across the vacant lot and here is the driveway coming down here (indicating). As you came to the driveway, just before you stepped in front of the driveway, did you look up that way?

"*A.* As I got to the edge of that driveway, I was still looking up towards the back of the lot. I saw nothing coming so I stepped into the driveway, that is, in front of the driveway, to walk across it, and immediately I was struck. Yes, quicker than lightning. It must have come quicker than lightning to hit me and I could not tell how far the garage is back from the sidewalk.

"*Q.* So that as you stood at the edge of the sidewalk, and there was no automobile coming, by the time you stepped onto the driveway or in front of it, this automobile came from—well, somewhere in the rear to the sidewalk and struck you?

"*A.* I say that is where I was hit, right there.

"*Q.* When you were standing at the edge of the driveway you saw nothing?

"*A.* Yes, sir.

"*Q.* By this time did you stop there, Mr. Ottaway, or were you walking right along all the time?

"*A.* I was walking right along all the time. I generally walk a pretty good gait.

"*Q.* From the time that you stood beside the driveway until you stepped in front of it, you were struck by something?

"*A.* I was struck by the car. * * *

"*Q.* I just want you to explain to the jury how this that I am going to say could possibly happen. Now, you are standing right beside this driveway that goes up from the sidewalk, and you testified you were looking up that driveway all the time, and you could see clear to the rear of the lot, that is, to the back of the house anyway, and you saw nothing, you saw no automobile, and the next instant as you stepped up in front of the driveway you were struck by an automobile?

"*A.* Yes, sir.

"*Q.* Now, explain it.

"*A.* Well, now, as you stepped up here to get on the sidewalk that automobile came right from the back of the house, but I could not see it, I never seen it at all, you see, but it came there just like lightning and struck me; the first I seen was something black; the auto did not have—only the width of the house to come.

"*Q.* It had the distance from the sidewalk to the house, and the depth of the house, at least that far?

"*A.* Yes.

"*Q.* And it came that distance and struck you, while you were stepping in front of it?

"*A.* Yes, sir. Well, I was walking along.

"*Q.* No, while you were walking from the edge of the driveway in front of the driveway?

"*A.* Yes, sir.

"*Q.* And that driveway is just as wide as the automobile's wheels are apart, isn't it?

"*A.* I think so."

Had plaintiff been walking along the sidewalk in the usual manner, casually observing what was going on within his immediate view, his version of the collision would have probably stated a case for the jury, but when he states that as he reached the edge of the driveway he was looking up the driveway toward the garage and no car was in sight and that he proceeded to go across it and before he could do so the automobile collided with him, he states a case which, to say the least, imposed upon himself the duty of either going across in safety or of discovering the car and avoiding it. Having failed in either one or the other of these duties it follows that he was guilty of contributory negligence. The record shows that defendant's dwelling was 15 feet and the garage 92 feet from the sidewalk. If the automobile were in the neighborhood of 92 feet distant when he was at the edge of the driveway, it would have had to move with great celerity to collide with him before he reached a place of safety, as two steps would have carried him over the driveway. It does not appear that there were

any obstructions which cut off his view, in fact it appears that there were not, and it appears from his own testimony that the morning was bright, that his eyesight and hearing were good and that he was walking at "a pretty good gait."

We are of the opinion that the trial court was not in error in directing a verdict for the defendant as the testimony stood at the close of plaintiff's proofs. The judgment should be affirmed.

BROOKE, J., concurred with BIRD, C. J.

FELLOWS, J. The court having directed a verdict, we have not before us the question of whether the testimony of the plaintiff was sufficiently convincing to support a verdict in his favor. It may be highly improbable that the automobile could come a distance of 92 feet without plaintiff seeing it had he looked in its direction as he walked along, even though it came "quicker than lightning"; but the credibility of such testimony was primarily for the jury. The place of accident was a private driveway crossing the sidewalk. No one claims that plaintiff would be guilty of contributory negligence because he did not stop, look and listen before crossing such a way. That he looked in that direction so indifferently as not to see the car coming did not make him guilty of contributory negligence, as a matter of law, nor does the improbability of his testimony produce such a result. I think plaintiff made a case for the jury and that the trial judge erred in directing a verdict against him. In my judgment a new trial should be granted with costs to plaintiff.

MOORE, STEERE, STONE, and KUHN, JJ., concurred with FELLOWS, J.

The late Justice OSTRANDER took no part in this decision.