KRUUTARI v. HAGENY et al.

Civ. A. No. 83.

District Court, W. D. Michigan, N. D.

Feb. 5, 1948.

Edward W. Massie, of Ironwood, Mich., for plaintiff.

Humphrey & Humphrey and Charles M. Humphrey, Jr., all of Ironwood, Mich., for defendants.

STARR, District Judge.

On March 19, 1942, plaintiff's decedent, Raymond E. Kruutari, an employee of the William Bonifas Lumber Company, sustained injuries while assisting in the inflation of a motor truck tire, which resulted in his death two days later. This suit to recover damages resulting from decedent's death, was originally begun by Victor Kruutari, special administrator of decedent's estate, against defendants Hageny and Musson, owners of the motor truck, in the circuit court for Gogebic county, Michigan. On petition of defendants, who were residents and citizens of the State of Wisconsin, the suit was removed to this court on the ground of diversity of citizenship. Victor Kruutari, special administrator, died October 30, 1946, and Hilda Kruutari, hav-

ing been appointed and qualified as successor administratrix of decedent's estate, was substituted as plaintiff.

The Bonifas Lumber Company was engaged in logging operations in Gogebic county, Michigan. Its logging camp, referred to as camp six and consisting of bunk houses, kitchen, machine shop, garages, and office, was located on its property about seven miles from a public highway. The road from the highway to the camp was a private road, built and maintained by the lumber company and used as a truck road in connection with its logging operations and the transportation of employees and supplies to the camp. Hunters occasionally used the road, but the company endeavored to exclude them. Plaintiff's decedent, who was about 19 years old, was employed by the lumber company July 31, 1941, as camp clerk and continued in that capacity until he was injured on March 19, 1942. As camp clerk, he acted as time keeper, clerked in the camp store, ordered and received camp supplies, and did other miscellaneous clerical work about the camp.

Defendants owned a 1935, 1½-ton, Ford truck. By oral agreement the lumber company hired this truck from them at a rental of $6.50 a day and used it in connection with the operation of camp six during the months of January, February, and March, 1942. Under the oral agreement the company was to make minor repairs and defendants were to make major repairs to the truck. The company used the truck principally for the purpose of hauling its employees a distance of about three miles from the camp to a railroad landing where they worked and in hauling noon lunches to its employees at the landing. In making these trips the truck apparently traveled on the private property of the lumber company and not upon a public highway. In February, 1942, the company employed one Reinart Leer to drive the truck, and Leer continued to drive it until after the accident in question. His work included the repairing of the tires.

On March 19th the truck in question was in the lumber company's repair shop at camp six with a flat rear tire. Driver Leer repaired the tire, and to inflate it, he jacked up the truck, started the engine, and operated an air compressor by pushing it against one of the rotating wheels. The deflated tire and wheel assembly, with the tire lock rim attached, was placed on the ground with the rim up. Leer, who was operating the air compressor, requested plaintiff's decedent to hold the nozzle of the air hose on the valve stem of the tire. While he was holding the air hose, and after the tire had been pumped to a pressure of 60 pounds or more, the lock rim flew off with great force, striking him on the head and face and inflicting fatal injuries.

The special administrator of decedent's estate brought this action in pursuance of Comp.Laws Mich.1929, sec. 14061, as amended by Act No. 297, Pub.Acts 1939, which provides in part: "Whenever the death of a person or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act."

In his complaint the administrator alleged that the truck driver, Reinart Leer, was the agent and employee of the defendants; that defendants and Leer were negligent in failing to keep the truck and tire lock rims in a safe condition of repair; in permitting the lock rims to become defective; and in failing to warn decedent of the defective and dangerous condition of the lock rim in question. Defendants filed answer denying liability. After several stipulated continuances because of the absence of a material witness and the illness and death of the special administrator, the case was tried by the court without a jury.

■ It should be kept in mind that plaintiff's decedent was an employee of the lum-

ber company; also that this suit is not against the lumber company or its employee, Reinart Leer, who drove the truck, but is only against Hageny and Musson, who owned the truck and who had rented it to the lumber company. As the accident occurred in Michigan, the questions presented should be determined according to the law of that state. The first question is whether or not there is a common-law liability on defendants.

The lumber company rented the truck from defendants and had possession and complete control of it. Defendants retained no control over the truck or over the driver employed by the lumber company. In its rental, control, and operation of the truck, the company stood in the position of an independent contractor. The testimony conclusively established that Leer, the driver of the truck, was not an agent or employee of defendants, as alleged. He was an employee of the lumber company, which hired and paid him and supervised and directed his work. As Leer was not an employee of defendants, they cannot be held liable to plaintiff under the common-law doctrine of respondeat superior. Plaintiff does not claim, nor is there proof, that defendants negligently rented the truck, knowing that it would be operated by an incompetent, careless or reckless driver. Furthermore, plaintiff does not claim, nor is there proof, that the truck or any part thereof was in a defective condition at the time defendants rented it to the lumber company in January, 1942. The established law relative to the common-law liability of the owner of a motor vehicle charged with negligence, as in the present case, is well stated in 5 Am.Jur. pp. 694-697:

"Sec. 353. * * * At common law, liability for the negligent use of an automobile by one other than the owner cannot be predicated against the owner merely because of such ownership. The owner of a car, in the absence of statute changing the common-law rule, is not liable for the negligence of one who stands in the relation of independent contractor in the operation of the car. * * * The automobile is not, according to the great weight of au-

thority, an inherently dangerous agency so as to make the owner liable. * * *

"Sec. 354. * * * Except as statutory liability may be imposed upon an owner for the negligence of those permitted to use his car, * * * an automobile owner is charged with the negligence of the driver only when he has the right to exercise control over and direct the driver to such an extent that the doctrine of respondeat superior may be invoked. * * *

"Sec. 355. * * * An owner who lends his automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, is liable for such person's negligence; the owner's liability in such cases is based upon his own negligence in intrusting the automobile to such a person. * * *

"Sec. 356. * * * In the absence of a change of rule by statute, the owner of an automobile, who intrusts it to another who is competent to operate it, is not, according to the great weight of authority, responsible for the negligence of the borrower in the use thereof in his own business and affairs. This is true where the car is let for hire."

In 5 Blashfield, Cyclopedia of Automobile Law and Practice, it is stated:

"Sec. 2911 (page 20). * * *

"While it has been said that automobile owners must be held to strictest account for negligence resulting in injury to others in the operation thereof, in the absence of any statute imposing such liability, mere ownership of a motor vehicle at the time of an accident caused by its negligent operation will not subject the owner to liability for the results of such negligence. To render the owner liable, there must be a duty on the part of the owner to plaintiff, a failure to perform such duty, and resulting injuries. * * *

"Sec. 2915 (page 35). * * *

"Ownership of a motor vehicle, by itself, does not establish agency, or the relation of master and servant, between the owner and the borrower or hirer negligently operating it. * * *

"As a general rule, therefore, in the absence of any statute imposing liability the

614

owner of a motor vehicle is not liable for injuries to a stranger occurring from the negligent use of the machine by one to whom the machine has been loaned or hired, while it is in the possession of the borrower or hirer, and not connected in any way with the owner's business, and not under the control of the owner. * * *

"Sec. 2924 (page 56). * * *

"Though, as a general rule, in the absence of statute, an owner of a motor vehicle is not liable for injuries to third persons from its negligent use by another to whom he loans or intrusts it for the latter's purposes, an exception to the rule exists where the owner loans his machine to one who is so reckless, heedless, or incompetent in his operation of the vehicle loaned as to render it, while in his hands, a dangerous instrumentality. * * *

"In such case the owner is liable for the driver's negligence in the operation of the machine, if he knows, at the time he so intrusts it to him, of the driver's character and habits, with respect to operating automobiles or of his incompetency, or if he should know such driver to be reckless or incompetent. * * * The liability in such instances rests not upon the fact of ownership, but upon the combined negligence of the owner in intrusting the machine to an incompetent and reckless driver and of the driver in its operation. * * *

"Sec. 2928 (page 63). * * *

"On the same theory which governs the liability of an owner intrusting his machine to an incompetent driver, where a motor vehicle, which is in such a state of repair as to be a dangerous instrumentality, is permitted by the owner to be used by another, the owner may be liable for injuries caused in its operation by the latter, as where an automobile is equipped with defective brakes and steering gear. * * *

"Defects in a machine, however, which do not materially interfere with its operation, do not subject the owner to liability because of his having permitted third persons to use it."

See also Wieczorek v. Merskin, 308 Mich. 145, 13 N.W.2d 239; Tanis v. Eding, 265 Mich. 94, 251 N.W. 367; Sweetnam v. Snow, 187 Mich. 414, 153 N.W. 770, L.R.A. 1916B, 757; Hartley v. Miller, 165 Mich. 115, 130 N.W. 336, 33 L.R.A.,N.S., 81; Collette v. Page, 44 R.I. 26, 114 A. 136, 18 A.L.R. 74; Saunders System Birmingham Co. v. Adams, 217 Ala. 621, 117 So. 72, 61 A.L.R. 1333; 5 Am.Jur. p. 698, sec. 358.

█ Under the foregoing authorities it is clear that the evidence adduced in the present case does not establish a common-law liability on the part of defendants for the damages resulting from the injury and death of plaintiff's decedent.

█ The plaintiff further contends that she is entitled to recover under Act No. 302, sec. 29, Pub.Acts Mich.1915, as amended, Comp.Laws Mich.1929, sec. 4648, which provides in part: "The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge."

This statute, which is similar to those adopted in many states, provides in effect that the owner of a motor vehicle shall be liable for the negligence of any person operating it with the owner's knowledge or consent. The constitutionality of the statute has been sustained as a valid exercise of the police power of the state. Stapleton v. Independent Brewing Co., 198 Mich. 170, 164 N.W. 520, L.R.A.1918A, 916. Defendants contend that this statute applies only to motor vehicles operated upon public highways and does not apply to vehicles being operated upon private property. They claim that, because the truck in question was operated, and the accident occurred, on the private property of the lumber company, the statute does not apply and they cannot be subjected to liability thereunder.

The title of Act No. 302,[1] Pub.Acts Mich. 1915 as amended, Michigan motor vehicle law, Comp.Laws Mich.1929, sec. 4632 et

[1] Title later amended by Act No. 255, Pub.Acts 1945.

seq., which act includes section 29 quoted above, provides as follows: "An Act to provide for the registration, identification and regulation of motor vehicles and trailers attached thereto operated upon the public highways of this state, and of the operators of such vehicles."

Section 1(a) of Act No. 302 as amended[2] provides in part: "The term 'vehicle' as used in this act shall include every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway of this state, excepting devices moved by human power."

Section 1(b) of Act No. 302 as amended[2] provides: "The term 'motor vehicle' as used in this act shall include every vehicle which is self-propelled, except any such vehicle as may be included within the term 'farm tractor' as herein defined."

Section 1(h) of Act No. 302 as amended[2] provides: "The term 'public highway' shall include the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."

The uniform motor vehicle act, Act No. 318, Pub.Acts Mich.1927, Comp.Laws Mich. 1929, sec. 4693 et seq., as amended by Act No. 318, Pub.Acts 1939, provides:

"Sec. 1. Definitions. * * *

"(o) 'Private road or driveway.' Every road or driveway not open to the use of the public for purposes of vehicular travel."

In the case of Wieczorek v. Merskin, supra, the Supreme Court of Michigan held that, as the liability imposed by section 29 of Act No. 302, quoted above, was purely statutory and in derogation of the common law, it should be strictly construed. It is an established rule of law that a statute, even when it is remedial, must be strictly construed if it affords a remedy against a party who would not otherwise be liable. Chicago & N. E. R. Co. v. Sturgis, 44 Mich. 538, 7 N.W. 213. In Isabella McKellar v. City of Detroit, 57 Mich. 158, 159, 23 N.W. 621, 622, 58 Am.Rep. 357, the court said: "It has been the settled law of this State that the right to recover depends entirely

upon the statute, and the main question is dependent on its construction. Under our Constitution the title of an act is significant, and usually controlling in determining its scope * * *. The body of the statute must reasonably harmonize with it."

In Esling v. City National Bank & Trust Co., 278 Mich. 571, 586, 587, 270 N.W. 791, 796, the concurring opinion states:

"The Constitution provides:

" 'No law shall embrace more than one object, which shall be expressed in its title.' Const.1908, art. 5, § 21. * * *

"The Constitution requires that the titles to legislative acts shall be truthful indexes to legislation, Wardle v. Cummings, 86 Mich. 395, 49 N.W. 212, 538; and the title to an act usually determines, defines and controls its scope, McKellar v. Detroit, 57 Mich. 158, 23 N.W. 621, 58 Am.Rep. 357; Booth v. Eddy, 38 Mich. 245; Bates v. Nelson, 49 Mich. 459, 13 N.W. 817. The legislature cannot use one title and explain in the body of the act it means something else. Northwestern Mfg. Co. v. Wayne Circuit Judge, 58 Mich. 381, 25 N.W. 372, 55 Am.Rep. 693. Anyone has a right to look to the title of the act to determine the purpose or object thereof. Sackrider v. Saginaw Board of Supervisors, 79 Mich. 59, 44 N.W. 165; Attorney General v. Detroit & Saline Plank Road Co., 97 Mich. 589, 56 N.W. 943."

See also Bissell v. Wayne Probate Judge, 58 Mich. 237, 24 N.W. 886.

The precise question as to whether or not the above-quoted statute is confined in its scope to motor vehicles operated on the public highways of Michigan has apparently not been definitely determined by the courts of that state. Plaintiff contends that the statute applies to motor vehicles operated upon private property as well as upon the public highways. She cites Kinsler v. Simpson, 257 Mich. 7, 240 N.W. 98; Ottaway v. Gutman, 207 Mich. 393, 174 N.W. 127; and Tuttle v. Briscoe Manufacturing Co., 190 Mich. 22, 155 N.W. 724, in support of her contention. Examination of these cases shows that, although the accident involved in each occurred on a private drive-

---

[2] Comp.Laws Mich.1929, sec. 4632, as amended by Act No. 162, Pub.Acts 1941.

way, the liability imposed on the defendants was a common-law liability and not a statutory one. .

The precise question in the present case was squarely presented and determined in Sylvester v. Brockway Motor Truck Corporation, 232 App.Div. 364, 250 N.Y.S. 35, 39. In that case the plaintiff was injured on a roadway located on the private grounds of an association owning a race track. The roadway was used, by trucks bringing supplies to the track stables and also by pedestrians. The plaintiff, while walking along the roadway, was injured by a truck owned by defendant. He sought to recover under section 59 of the New York Vehicle and Traffic Law, Consol.Laws, c. 71, which provided in substance that every owner of a motor vehicle "operated upon a public highway" shall be liable for the death or injuries to persons or property resulting from negligence in the operation thereof by any person with the owner's permission. It was held that the defendant, as owner of the truck, was not liable to plaintiff under the statute because at the time of the accident the truck was not being operated on a public highway within the purview of the statute. In denying recovery the court said: "Since this statute is in derogation of the common law, it must be strictly construed. 'A statute, even when it is remedial, must be followed with strictness, where it gives a remedy against a party who would not otherwise be liable.' Suth.Stat.Const., § 371; Leppard v. O'-Brien, 225 App.Div. 162, 164, 232 N.Y.S. 454, 456. 'Public highway' or 'public place' must be given its usual and ordinary meaning in the light of the purposes and power of the state to regulate the use of public highways. There is no implication that it was the purpose to extend the application of this law to the operation of motor vehicles on private property."

The precise question in the present case was also considered and determined in Pettine v. Tuplin, 1946, 71 R.I. 374, 46 A.2d 42, 43. In that case the plaintiff sought to hold the owner of an automobile, which was being driven by his son, liable under a state statute for damages resulting from an accident occurring in an open field some distance from a public highway. The statute provided: "Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the operator thereof, if other than such owner, or lessee, or bailee, shall in case of accident, be deemed to be the agent of the owner or lessee, or bailee, of such motor vehicle." Gen.Laws R.I.1938, c. 98, sec. 10, as amended by Laws 1940, c. 867.

In denying recovery under this statute the court said:

"The undisputed evidence shows that plaintiff * * * was injured in an automobile accident which occurred in a field a considerable distance off the Colt Drive, so called, on the Colt estate. * * * He (the driver of the car, who was driving with the owner's consent but not as the owner's agent) drove into the Colt estate along the Colt Drive. On two occasions he deliberately left the traveled part of the Drive and drove across the shoulder thereof into an open field. On the second occasion he ran into a ditch in the field and (plaintiff) * * * was thrown against the windshield and severely injured. * * *

"There is no evidence here of any formal act of dedication of the Colt Drive as a public highway, nor is there any evidence of its acceptance or its use and maintenance as such by either the state or the town of Bristol. * * *

"In employing the term 'public highway' in sec. 10, we are of the opinion that the legislature meant only such a highway as was dedicated to the use of the public and not a private way used by the public merely by invitation of the owner. This view is strengthened by the fact that this section is a part of the general laws governing the operation of motor vehicles, where in various provisions thereof it clearly appears that 'public highway,' in the sense above set forth, is what is intended. G.L.1938, chap. 98. There being no evidence that Colt Drive was such a highway, sec. 10 was not applicable to the facts of this case."

■ The title of the Michigan motor vehicle law, hereinbefore quoted, Act No. 302, Pub.Acts Mich.1915 as amended, expressly limits its application to "motor vehicles * * * operated upon the public highways of this state." Section 2(a) of the act as amended [3] expressly applies only to "every owner desiring to operate a motor vehicle upon the public highways of this state." Section 12(a) of the act,[4] relating to license plates, applies only to the operator of "a motor vehicle on the public highways of this state." Section 17 of the act [5] pertains to the use of chains or other nonskidding devices on "the road bed of the highway." Although section 29 hereinbefore quoted does not expressly use the words "public highways," the use of these words in the title and in several provisions of the act clearly indicates a legislative intendment that the act should apply only to motor vehicles operated on the public highways. In 5 Blashfield, Cyclopedia of Automobile Law and Practice, sec. 2912, page 30, it is stated: "The terms 'public highway' and 'public place' within such a statute must be given their usual and ordinary meanings in the light of the purposes and power of the state to regulate the use of public highways. It was not the purpose of the statute to extend its application to the operation of motor vehicles on private property."

In Detroit International Bridge Co. v. American Seed Co., 249 Mich. 289, 295, 228 N.W. 791, 793, the court said: "When employed in a statute, there is no doubt of the meaning of the word 'highway' unless, as sometimes happens, the context plainly shows a perversion of use. The expression 'private highway' is a misnomer and 'public highway' is tautology. A highway is a public way for the use of the public in general, for passage and traffic, without distinction. Macomber v. Nichols, 34 Mich. 212, 22 Am.Rep. 522; Flint & Pere Marquette R. Co. v. Gordon, 41 Mich. 420, 2 N.W. 648; Burdick v. Harbor Springs Lumber Co., 167 Mich. 673, 133 N.W. 822; Elliot on Roads and Streets, (4th Ed.) Vol. 1, p. 1; Gorham v. Johnson, 157 Mich. 433, 122 N.W. 181."

See also 25 Am.Jur. page 339, sec. 2; 39 C.J.S., Highways, § 1; 80 A.L.R. 469.

■ The court concludes that section 29 of Act No. 302, hereinbefore quoted, applies only to the operation of motor vehicles on the public highways of the state and does not apply to their operation on private property. Therefore, section 29 has no application in the present case where the truck was operated and the accident occurred on the private property of the Bonifas Lumber Company. Plaintiff cannot predicate her right to recover against defendants on this statute. Judgment of no cause of action will be entered for defendants.

### Findings of Fact

1. Plaintiff is a resident and citizen of the State of Michigan; defendants are residents and citizens of the State of Wisconsin; the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

2. The William Bonifas Lumber Company owned and operated a logging camp known as camp six in Gogebic county, Michigan. The camp was located about seven miles from the public highway, and the private road leading from the highway to the camp was built, maintained, and used by the lumber company in connection with its logging operations.

3. On July 31, 1941, plaintiff's decedent, Raymond E. Kruntari, was employed by the lumber company as camp clerk at camp six and continued to work in that capacity until he was fatally injured on March 19, 1942. The scope of his employment did not include the repairing of trucks and tires.

4. Defendants owned a 1935, 1½-ton Ford truck which they rented to the lumber company at a rate of $6.50 a day. The company had possession and complete control of the truck and used it in connection with its operation of camp six during the months of January, February, and March,

---

[3] Comp.Laws Mich.1929, sec. 4633, as amended by Act No. 162, Pub.Acts 1941.

[4] Comp.Laws Mich.1929, sec. 4642.

[5] Comp.Laws Mich.1929, sec. 4644.

1942. Defendants retained no control over the truck or over the driver, who was employed by the lumber company.

5. In February, 1942, the lumber company employed one Reinart Leer to drive the truck which it had rented from defendants, and his work included repairing the tires. Leer continued in the employ of the company until after the accident on March 19, 1942, which resulted in the death of plaintiff's decedent. Leer was an employee of the lumber company, which hired and paid him and supervised and directed his work. He was not an agent or employee of defendants.

6. On March 19, 1942, the truck was in the repair shop of the lumber company at camp six with a flat rear tire. The driver Leer repaired the tire and requested plaintiff's decedent to assist him in inflating it. While the tire was being inflated, the lock rim flew off with great force, striking plaintiff's decedent and inflicting injuries which caused his death on March 21st.

7. The injuries resulting in decedent's death occurred at the logging camp located on the private property of the lumber company, and the injuries were sustained in connection with the company's operation of the truck on its private property.

8. The evidence did not establish that the truck or any part thereof was in a defective or dangerous condition at the time it was rented by the defendants to the lumber company.

9. The evidence did not establish that the defendants rented the truck to the lumber company, knowing that it would be operated and driven by an incompetent, reckless or careless person.

10. At the time of the accident the truck was being operated upon the private property of the lumber company and not upon a public highway.

## Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter of this suit.

2. As the accident resulting in the death of plaintiff's decedent occurred in Michigan, the questions presented should be determined under the law of that state.

3. Plaintiff's decedent was an employee of the William Bonifas Lumber Company.

4. Reinart Leer, the driver of the truck in question, was an employee of the lumber company. He was not an agent or employee of the defendants.

5. During the period of its rental and use by the lumber company, defendants had no control over the truck or its driver.

6. The facts and circumstances shown do not establish a common-law liability on defendants for damages resulting from the death of plaintiff's decedent.

7. As section 29 of Act No. 302, Pub.Acts Mich.1915, as amended,[6] quoted in the foregoing opinion, creates a purely statutory liability on the owners of motor vehicles, in derogation of the common law, it should be strictly construed. This statute applies only to the operation of motor vehicles on the public highways of the State of Michigan. It does not apply to the operation of motor vehicles on private property.

8. The above statute has no application in the present case, because the truck was operated and the accident occurred on the private property of the lumber company.

9. Plaintiff cannot predicate her right to recover against defendants on said statute.

10. Defendants are entitled to a judgment of no cause of action.

11. Defendants may recover costs.

---

[6] Comp.Laws Mich. 1929, sec. 4648.