LADNER *v.* VANDER BAND.

OPINION OF THE COURT.

1. ACTION—FELLOW EMPLOYEES—PARKING LOT—WORKMEN'S COM-
PENSATION ACT.

> Tort action will not lie for injuries sustained by plaintiff, a fel-
low employee of defendant, while both were on parking lot
furnished for use of employees by their common employer 5
minutes after plaintiff left work and 25 minutes before de-
fendant was scheduled to commence work, the exclusive remedy
for such injuries being under the workmen's compensation act
(CL 1948, § 411.1 *et seq.,* as amended).

2. WORKMEN'S COMPENSATION—INJURIES ON PARKING LOT—REASON-
ABLE TIME.

> Injuries to plaintiff, coemployee of defendant wife, were inflicted
within a "reasonable time * * * after his working hours,"
where plaintiff was on the employer-owned parking lot 5 min-
utes after having finished his work and defendant was present
25 minutes before commencing, hence, the statutory presumption
that the injuries were in the course of employment applied
(CLS 1961, § 412.1).

3. JUDGMENT—SUMMARY JUDGMENT—FELLOW EMPLOYEES—WORK-
MEN'S COMPENSATION.

> Summary judgment was properly granted on defendant's motion
therefor in action by fellow employee for injuries he received
on parking lot owned by common employer 5 minutes after
he left work and some 25 minutes before defendant was
scheduled to commence work, where no material fact question
remained to be proven or determined, the exclusive remedy

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3]  58 Am Jur, Workmen's Compensation § 48 *et seq.*
[4, 5, 7, 8]  8 Am Jur 2d, Automobiles and Highway Traffic § 601.
[6]  50 Am Jur, Statutes § 259 *et seq.*
[9]  50 Am Jur, Statutes § 286.

being under the workmen's compensation act (CL 1948, § 411.1 *et seq.*, as amended).

4. AUTOMOBILES—LIABILITY OF OWNERS—PUBLIC HIGHWAYS.
   Ownership liability of motor vehicles is not limited to vehicles operated upon the public highways of the State by the title or sections of the vehicle code (PA 1949, No 300, title, § 401).

5. SAME—LIABILITY OF OWNER—PUBLIC HIGHWAY—STATUTES.
   Summary judgment for defendant owner of automobile which was so negligently driven on privately owned parking lot by defendant operator, a coemployee of plaintiff, as to cause injury to plaintiff *held*, improperly entered, since ownership liability for operation of automobiles is not limited to their operation upon public highways (PA 1949, No 300, title, § 401).

### SEPARATE OPINION.

### BLACK, J.

6. STATUTES—DEFINITIONS—CONSTRUCTION.
   *Definition of a term not used in a section of a statute should not be read into such section by a court when construing and applying such section, where the enactment sets forth definitions of terms in other sections with the direction that such terms are to be accepted and applied as there defined when used in the act (CLS 1961, §§ 257.1, 257.20, 257.401).*

7. AUTOMOBILES—OWNER'S LIABILITY—PUBLIC HIGHWAY—PRIVATE PROPERTY.
   *The vehicle code intended to protect persons who might be injured either upon a public highway or upon private property as a result of the negligent operation of motor vehicles by the owners or others operating them with the permission of the owners (CLS 1961, § 257.401).*

8. SAME—NEGLIGENCE—PRIVATE PROPERTY.
   *The imposition of liability upon the owner of a motor vehicle for any injury occasioned by its negligent operation includes liability for negligent operation on private property, such as on the parking lot provided by the operator's employer (CLS 1961, § 257.401).*

9. WORDS AND PHRASES—ANY.
   *Any is looked upon as synonymous with every, each one of all, and of every kind, and negatives the idea of exclusion.*

Appeal from Kent; Hoffius (Stuart), J.   Submitted January 7, 1965.   (Calendar No. 19, Docket No. 50,482.)   Decided October 4, 1965. Rehearing denied December 7, 1965.

Declaration by Edward J. Ladner against John Vander Band and Cora Vander Band for injuries sustained when plaintiff was struck by an automobile driven by Cora Vander Band and owned by John Vander Band.   Summary judgment for defendants. Plaintiff appeals.   Affirmed as to defendant Cora Vander Band.   Reversed as to defendant John Vander Band.

*Walter J. Russell,* for plaintiff.

*Luyendyk, Hainer, Hillman, Karr & Dutcher* (*Richard B. Baxter* and *Robert N. Hammond,* of counsel), for defendants.

T. M. KAVANAGH, C. J.   This is an appeal from the circuit court for the county of Kent by plaintiff from an order granting defendants' motion for summary judgment.[1]

The following is an agreed statement of facts stipulated to by the parties:

"On September 15, 1960, at approximately 7:35 a.m., the plaintiff Edward J. Ladner left the General Motors Corporation, Fisher Body Division Plant No. 2, at 2060 Voorheis, N.W., Grand Rapids, Michigan, where he had just completed work on the 11 p.m. to 7:30 a.m. shift.   He walked out of the plant, through the gate and across Voorheis street to the plant parking lot.   While walking towards his automobile in the plant parking lot, he was struck from behind by a 1959 automobile operated by the defendant Cora Vander Band and owned by the defendant John Vander Band.   The defendant Cora Vander Band

---

[1] See GCR 1963, 117.2.—REPORTER.

had just turned into the plant parking lot from Voorheis street, N. W., in order to park her car prior to commencing work in the plant office.

"The parking lot where the accident occurred is owned by General Motors Corporation and is maintained by it for the use of its employees. Both the plaintiff and the defendant Cora Vander Band regularly parked in said parking lot while at work.

"The defendant Cora Vander Band was driving the automobile which was owned solely by her husband, John Vander Band, with the knowledge and consent of John Vander Band.

"The plaintiff, Edward J. Ladner, and the defendant Cora Vander Band were both employees of General Motors Corporation, Fisher Body Division, and were employed at the plant where the accident occurred. At the time of the accident, the defendant Cora Vander Band was in the plant parking lot parking her car for the purpose of commencing work and the plaintiff, Edward J. Ladner, was in the plant parking lot going to his car for the purpose of leaving work.

"The plaintiff, Edward J. Ladner, sustained injuries, especially to his left knee, for which he neither filed any claim nor received any benefits under the workmen's compensation law."

Plaintiff instituted suit on May 24, 1962, and on April 30, 1963, defendants filed a motion for summary judgment contending (1) plaintiff failed to state a claim; (2) that the rights of the plaintiff are governed by the workmen's compensation act and that plaintiff is barred from suing defendants; (3) that plaintiff's injuries occurred while going from work while on his employer's premises by the alleged negligence of defendant Cora Vander Band who was going to work while on the employer's premises, and were coemployees in the course of their employment, subject to workmen's compensation laws of this State; (4) that there is no issue as to any material

fact and defendants are therefore entitled to a judgment of no cause for action as a matter of law; (5) that the accident occurred on private property, not on the public highways, and defendant John Vander Band as owner of the automobile operated by defendant Cora Vander Band is, therefore, entitled to a judgment of no cause for action as a matter of law.

We conclude that under the stipulated facts and pleadings in this case the trial court correctly held that plaintiff could not bring suit in tort against his coemployee, defendant Cora Vander Band. The facts and circumstances in this case would indicate both plaintiff and defendant Cora Vander Band were subject to the workmen's compensation act.[2]

Unlike the situation in *Brooks* v. *Fields,* 375 Mich 667, all of the facts to bring into play the presumption of section 1 of part 2 of the workmen's compensation act,[3] are included in the pleadings and stipulation of facts. They were both on the premises of the employer. Plaintiff had just finished work on the 11 p.m. to 7:30 a.m. shift. Defendant Cora Vander Band was on the premises for the purpose of commencing work at 8 a.m. The accident occurred at 7:35 a.m. Both were employed at the same plant and both regularly parked in and used the employees' parking lot where the accident occurred. Clearly, both were within the statutory "reasonable time" before or after working hours.

No material fact question remained to be proven or determined. It was a question of law, and under the rule of *Sergeant* v. *Kennedy,* 352 Mich 494, reaffirmed in *Ayers* v. *Genter,* 367 Mich 675, the court properly granted motion for summary judgment as to defendant Cora Vander Band.

---

[2] CL 1948, § 411.1 *et seq.* (Stat Ann 1960 Rev § 17.141 *et seq.*).
[3] CLS 1961, § 412.1 (Stat Ann 1960 Rev § 17.151).

Plaintiff further contends that the provisions of the ownership liability statute[4] did not prohibit recovery against defendant John Vander Band, owner of the automobile which was operated upon private property with his express consent.

Defendant owner relies upon *Kruutari* v. *Hageny*, 75 F Supp 610, a decision of the United States district court for the western district of Michigan (decided in 1948) holding that the use of the words "public highways" in the title of the Michigan motor vehicle law and in several provisions of the act clearly indicates a legislative intendment that the act should apply only to motor vehicles operated on public highways. Subsequent to the decision in *Kruutari* the act there discussed was repealed by the legislature and a new code was adopted—PA 1949, No 300 (CLS 1961, § 257.1 *et seq.* [Stat Ann 1960 Rev § 9.1801 *et seq.*]).

It is not necessary for us to determine whether Judge Starr was right in *Kruutari*. He was dealing with a former title—a title which announced no provision, as now, for overall owner liability. Nothing in the present title or in the act limits application of the ownership liability section to motor vehicles "operated upon the public highways of this State." The title of PA 1949, No 300, provides as follows (2A CLS 1961, p 90 [8 Stat Ann 1960 Rev, p 52]):

"An act to provide for the registration, titling, sale and transfer, and regulation of vehicles operated upon the public highways of this State; to provide for the licensing of vehicle dealers and wreckers; to provide for the examination, licensing and control of operators and chauffeurs; to provide for the giving of proof of financial responsibility and security by owners and operators of vehicles; to provide for the imposition, levy and collection of specific

---

4 CLS 1961, § 257.401 (Stat Ann 1960 Rev § 9.2101).

taxes on vehicles, and the levy and collection of sales and use taxes, license fees and permit fees; to provide for the regulation and use of streets and highways; to provide penalties for violation of any of the provisions of this act; *to provide for civil liability of owners and operators of vehicles* and service of process on nonresidents; and to repeal all other acts or parts of acts inconsistent herewith or contrary hereto." (Emphasis supplied.)

It would appear from an analysis of the title that the intent of the legislature was not to limit the civil liability provisions to "public highways" or it would have so provided within the civil liability portion of the title.

Likewise, in analyzing the ownership liability provisions of the statute,[5] again the legislature did not see fit to so limit the liability to "vehicles operated upon the public highways," but provided as follows:

"Sec. 401. Nothing herein contained shall be construed to abridge the right of any person to prosecute a civil action for damages for injuries to either person or property resulting from a violation of any of the provisions of this act by the owner or operator of a motor vehicle, his agent or servant. The owner of a motor vehicle shall be liable for *any injury* occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law requires." (Emphasis supplied.)

Had the legislature intended to limit ownership liability to "vehicles operated upon the public highways" it would have used language to carry out such intent.

---

[5] CLS 1961, § 257.401 (Stat Ann 1960 Rev § 9.2101).

We conclude, therefore, that the ownership liability statute is not restricted to the operation of motor vehicles upon public highways.

Summary judgment for the defendant operator is affirmed, with costs in her favor. Summary judgment for the defendant owner is reversed, with costs to plaintiff.

DETHMERS, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred with T. M. KAVANAGH, C. J.

BLACK, J. (*concurring*). Counsel for the defendant-appellees depend mistakenly upon *Kruutari* v. *Hageny* (DC WD Mich), 75 F Supp 610, a decision which was handed down prior to enactment of the plenary codification of 1949[1] (CLS 1961, § 257.1 *et seq.* [Stat Ann 1960 Rev § 9.1801 *et seq.*]; known by short title as the "Michigan vehicle code"). More comprehensive, and definitely less restrictive than the statutory title Judge Starr was considering when he wrote *Kruutari,* is the title which headed the vehicle code at the time this plaintiff's injury was sustained (September of 1960). It read at the time and reads now (2A CLS 1961, p 90 [8 Stat Ann 1960 Rev, p 52]):

"An act to provide for the registration, titling, sale and transfer, and regulation of vehicles operated upon the public highways of this State; to provide for the licensing of vehicle dealers and wreckers; to provide for the examination, licensing and control of operators and chauffeurs; to provide for the giving of proof of financial responsibility and security by owners and operators of vehicles; to provide for the imposition, levy and collection of specific taxes on vehicles, and the levy and collection of sales and use taxes, license fees and permit fees;

[1] *Kruutari* v. *Hageny* (DC WD Mich), 75 F Supp 610, was decided February 8, 1948. The injury to the decedent was sustained March 19, 1942.—REPORTER.

to provide for the regulation and use of streets and highways; to provide penalties for violation of any of the provisions of this act; *to provide for civil liability of owners and operators of vehicles and service of process on nonresidents;* and to repeal all other acts or parts of acts inconsistent herewith or contrary hereto." (Emphasis supplied by present writer.)

Judge Starr was doubtless right, in *Kruutari,* when he wrote (p 617):

"The title of the Michigan motor vehicle law, hereinbefore quoted, PA 1915, No 302, as amended, expressly limits its application to 'motor vehicles * * * operated upon the public highways of this State.'"

He was dealing, however, with a former title; a title which announced no provision—as now—for overall owner liability. One may not rightly say, on strength of *Kruutari* or otherwise, that the title to the code of 1949 "expressly" or otherwise limits application of section 401 therein to motor vehicles "operated upon the public highways of this State." Nothing in the section says so and the title to the code does not now dictate or suggest that we say so.

The New York statute,[2] which supported the eminently sound reasoning found in *Sylvester* v. *Brockway Motor Truck Corp.,* 232 App Div 364 (250 NYS 35) (one of the cases relied upon by Judge Starr in *Kruutari*), specifically includes what is *not* in our statute or in the California statute. See *Webster* v. *Zevin,* 77 Cal App 2d 855 (176 P2d 960)[3] (followed

---

[2] New York Vehicle and Traffic Code, 1929, § 59. See currently 62a McKinney's Consolidated Laws of New York, Vehicle and Traffic Laws, § 388.—REPORTER.

[3] See *Webster* v. *Zevin* as reported in 77 Cal App 2d 855, 859. The following note appears there:

"A petition for a rehearing was denied March 3, 1947, and appellant's petition for a hearing by the supreme court was denied March 31, 1947."

expressly in *Baugh* v. *Rogers,* 80 Cal App 2d 136 [181 P2d 387]), wherein the court properly distinguished the *Sylvester Case:*

"The case of *Sylvester* v. *Brockway Motor Truck Corp.,* 232 App Div 364 (250 NYS 35), cited by appellant and which dealt with an accident occurring on private property, is not helpful because the New York statute contains direct and positive language limiting its effect to accidents occurring on a public highway."

The reasoning of *Webster* was based upon section 402 of the California statute.[4] I quote it from *Webster:*

" 'Section 402. Liability of private owners.

" '(a) Every owner of a motor vehicle is liable and responsible for the death or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages.' "

There is no need for additional analysis of the *Webster Case.* It is worthy both of reading and application since the statute applied therein is a substantial duplicate of the present Michigan statute. Like our section 401, and unlike the New York statute, it effectively declares owner liability without limitation as to the place of commission of the operator's causally negligent act. I would follow it.

The specific heading of all of the definitions which appear in our code reads as follows (CLS 1961, § 257.1 [Stat Ann 1960 Rev § 9.1801]):

---

4 Deering's California Codes, Annotated, Vehicle, § 17.150.—RE-PORTER.

"Sec. 1. The following words and phrases as defined in this chapter and as herein enumerated *when used in this act* shall, for the purpose of this act, have the meanings respectively ascribed to them in this chapter." (Emphasis supplied by writer.)

"Highway or street" (CLS 1961, § 257.20 [Stat Ann 1960 Rev § 9.1820]) was *not* "used," by the legislature, anywhere in said section 401 (CLS 1961, § 257.401 [Stat Ann 1960 Rev § 9.2101]). I suggest accordingly, the legislature having advised the courts in the first section of the code that each of the ensuing definitions should be accepted and applied *"when used in this act,"* that when one of the definitions is *not* so "used" the courts should *not* read it in. We should instead pursue the final paragraph of the *Webster Case, supra* p 859:

"We therefore hold that the legislative intent as expressly stated in the statute was to protect persons who might be injured either upon a public highway or upon private property as a result of the negligent operation of motor vehicles by persons other than the owners thereof, who are operating the same with the permission of such owners. Were we to hold otherwise we would be departing from the clear meaning of the language of the statute which is free from ambiguity. We would be required to rewrite a statute to accord with a presumed legislative intent. To write into the statute a limitation of its application to accidents occurring solely upon public highways and to thereby withhold its application from cases where injuries or death occur on private property would not be construction of the statute at all, but would amount to judicial legislation, and courts are without power to legislate."

I do not see how the legislature could have titled and then written a plainer declaration of general owner liability; a liability which is qualified only by the express exceptions that are set forth in said

section 401, no one of which is of present concern.
That body told us that the owner "shall be liable for
*any* injury occasioned by the negligent operation of
such motor vehicle." It did *not* say that such liabil-
ity should be limited to negligent operation "upon
a public highway." It *did* employ the adjective pro-
noun "any," prior to "injury occasioned by the
negligent operation of such motor vehicle," which
pronoun courts, lawyers and lay folk have ever
looked upon as synonymous with "every," and "each
one of all." See detailed discussion in *Harrington*
v. *Inter-State Business Men's Accident Ass'n,* 210
Mich at 327, 330, 331; also the following approved
quotation appearing in *Gibson* v. *Agricultural Life
Ins. Co., of America,* 282 Mich 282 at 289:

"The clause uses the word 'any,' which, to the
ordinary understanding implies 'of every kind.' The
word negatives the idea of exclusion and would seem
to mean just what it says."

## SUMMARY.

*First:* If *Kruutari's* result is to be justified, it
must be on ground that the concededly more restric-
tive title to Michigan's then motor vehicle law for-
bade—for a controlling reason attributable to Const
1908, art 5, § 21[5]—the construction of then section 29
(CL 1929, § 4648 [Stat Ann § 9.1446]) for which the
plaintiff *Kruutari* contended.[6] Judge Starr's con-
cern in such regard appears in the discussion which
starts on page 614 of *Kruutari's* report. See partic-
ularly his observation (citing *Northwestern Manfg.
Co.* v. *Wayne Circuit Judge,* 58 Mich 381 [55 Am St
Rep 693]) that "The legislature cannot use one title
and explain in the body of the act it means something
else." But here, as previously pointed out, the broad-

[5] See currently Const 1963, art 4, § 24.—Reporter.
[6] The title, as it stood prior to the codification of 1949, may be found
on page 4394 of CL 1948.

ly expanded title of the 1949 Michigan vehicle code expressly provides for that which was significantly absent from the title of the former act. Thus, wholly foreign to *Kruutari's* interpretive effort, we have before us no titular involvement; no question arising under Const 1908, art 5, § 21 (now Const 1963, art 4, § 24).

*Second:* The decision counsel urge upon us would establish a new form of immunity from liability; an immunity vesting automatically as soon as the car owner's loaned motor vehicle crosses the boundary, from some street or highway which is publicly maintained, to another way open to public use that is not publicly maintained. The acres and acres of driveways and parkways surrounding our burgeoning supermarkets are modern examples of this new locale of immunity. So are the congested, darkened and injury-prone areas of drive-in theaters. And for venerable examples, think of the hundreds of miles of woodland "trails" which tourist-motorists find designated on northern Michigan conservation department maps and use today in greater and greater numbers. Based on natural Michigan sand or gravel, most of these trails and other like public ways have never required and so have never received public maintenance.[7]

And what about all of the private driveways of Michigan? Should the owner, by what appears in the vehicle code, be held immune when his loaned car is negligently backed over a small child playing thereon? What could this Court, having applied *Kruutari* to today's question, say when the borrower has rear-ended another car, say one stopped by milady on one of Kroger's exitways to await the passage of a pedestrian or car on the adjacent public

---

[7] See *Waubun Beach Association* v. *Wilson*, 274 Mich 598; *South Branch Ranch Co.* v. *Emery*, 191 Mich 188; *Pulleyblank* v. *Mason County Road Commission*, 350 Mich 223.

sidewalk or publicly maintained street? The borrower's tort would have been committed on "private property," yet the injurious ultimate thereof would have taken place on the adjacent publicly maintained way. In sum, what is contended here would turn the liability imposed by said section 401 on and off, like a faucet or switch, as the borrowed car crosses and recrosses boundaries separating publicly maintained ways from other publicly used ways.

It is palpable that no legislator dreamed of such a restrictive result when the code of 1949 was conceived and enacted under the banner of a pointedly broadened title. I prefer to conclude, *Kruutari* being freshly before the legislature when the code was considered and debated, that the precise portion of the title as quoted above was added by the legislature to foreclose *Kruutari*, definitely and finally, as of final adjournment of the session of 1949.

I agree with the Chief Justice. Summary judgment for the defendant operator should be affirmed, with costs in her favor. Summary judgment for the defendant owner should be reversed, with costs to plaintiff.

KELLY, J., concurred in result.