SIMERKA *v.* PRIDEMORE.

DECISION OF THE COURT.

1. JUDGMENT—SUMMARY JUDGMENT—AUTOMOBILES—EQUALLY DIVIDED COURT.

Summary judgment for defendant in automobile negligence case arising out of accident between 2 employees of the same employer on the parking lot used by the employees is affirmed by an equally divided court.

SEPARATE OPINION FOR AFFIRMANCE.

DETHMERS, C.J., and BRENNAN, J.

2. JUDGMENT—SUMMARY JUDGMENT—INJURIES—FELLOW EMPLOYEE—IN COURSE OF EMPLOYMENT.

*Summary judgment for defendant in automobile negligence case arising out of accident between two employees of the same employer, on the parking lot used by employees and over which employer's plant protection men exercised jurisdiction, at time when both were leaving work for the day* held, *proper, since plaintiff's injuries arose out of and in the course of his employment and therefore provisions of workmen's compensation law barring action based upon the negligence of a fellow employee are applicable (CL 1948, § 411.1).*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2, 9] 58 Am Jur, Workmen's Compensation § 61.
[3] 58 Am Jur, Workmen's Compensation § 437.
[4] 58 Am Jur, Workmen's Compensation § 221.
[5, 7, 8] 58 Am Jur, Workmen's Compensation § 217 *et seq.*
[6] 50 Am Jur, Statutes § 294 *et seq.*
[10] 58 Am Jur, Workmen's Compensation § 58 *et seq.*
[11–16] 41 Am Jur, Pleading § 340 *et seq.*

SEPARATE OPINION FOR AFFIRMANCE.
KELLY and O'HARA, JJ.

3. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—PRESUMPTION.

*Summary judgment for defendant against coemployee plaintiff in action to recover damages sustained by plaintiff in automobile accident which occurred in the employer's parking lot 15 minutes after the end of their shift* held, *proper, since to hold otherwise would vitiate the presumption that every employee going to or from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, is in the course of his employment.*

SEPARATE OPINION FOR REVERSAL.
BLACK, T. M. KAVANAGH, and ADAMS, JJ.

4. WORKMEN'S COMPENSATION—IN THE COURSE OF EMPLOYMENT—PRESUMPTION.

*Every employee going to or from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, shall be presumed to be* in the course of his employment *(CLS 1961, § 412.1).*

5. SAME—PRESUMPTION—INJURY ARISING OUT OF EMPLOYMENT.

*The workmen's compensation statute supplies no presumption that an injury to an employee going to or from his work, while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, arose* out of his employment *(CLS 1961, § 412.1).*

6. STATUTES—INTENT.

*Legislative intent of a statute is determinable properly by what was at the time of enactment rather than what might appear a half century later.*

7. WORKMEN'S COMPENSATION—IN THE COURSE OF EMPLOYMENT—PRESUMPTION.

*Application of statutory presumption that employee going to or from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, is in the course of his employment depends upon the setting of facts which provides its admission to consideration (CLS 1961, § 412.1).*

8. SAME—IN THE COURSE OF EMPLOYMENT—PRESUMPTION.

*Statutory presumption that employee going to or from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, is in the course of his employment, weakens to legal extinction the farther an employee bound on his own mission progresses from his work station, both in point of time and space (CLS 1961, § 412.1).*

9. JUDGMENT—SUMMARY JUDGMENT—AUTOMOBILE ACCIDENT—CO-EMPLOYEES.

*Summary judgment for defendant in automobile accident between coemployees, on parking lot provided and maintained by employer for employees, held, error, the question whether plaintiff's injury arose out of and in the course of his employment depending on fact questions of reasonable time and proximity to place of employment, which require a trial for their proper solution.*

10. ACTION—DERIVATIVE ACTION BY WIFE OF INJURED PLAINTIFF—PRIMARY CASE.

*Independent right of wife of person injured by defendant coemployee to sue for consequential damages arising out of defendant's negligence, depends on whether in the primary action an actionable wrong is determined to have been committed by the same defendant.*

SEPARATE OPINION FOR REVERSAL.

SOURIS, J.

11. JUDGMENT—SUMMARY JUDGMENT—ISSUE AS TO MATERIAL FACT.

*Determination by judge, as a matter of law, on motions for summary judgment, in automobile accident case that both drivers were, at the time of the collision, engaged in the course of their employment and the collision arose out of that employment and therefore action based upon the negligence of a fellow employee is barred, held, error, these being ultimate fact conclusions that a jury might reach on the basis of evidentiary facts and the jury properly could reach contrary ultimate fact conclusions therefrom (GCR 1963, 117).*

12. SAME—SUMMARY JUDGMENT—GENUINE ISSUE AS TO A MATERIAL FACT.

*Summary judgment is allowed in cases where "there is no genuine issue as to any material fact", the material fact being the ultimate fact issue upon which a jury's verdict must be based (GCR 1963, 117).*

13. SAME—SUMMARY JUDGMENT—POSSIBILITY OF CONTRARY CONCLU-
SIONS.

*A summary judgment in case where facts are disputed, or where
they are not disputed but different minds might draw different
conclusions from them, is improper, as the case must then be
left to jury determination (GCR 1963, 117).*

14. SAME—ABSENCE OF DISPUTE—GENUINE ISSUE AS TO A MATERIAL
FACT.

*The absence of dispute over evidentiary facts does not mean
"there is no genuine issue as to any material fact", summary
judgment therefore being proper; but if a jury could draw
conflicting inferences from the evidentiary facts and could
reach conflicting conclusions of ultimate fact, a summary judg-
ment would be improper (GCR 1963, 117).*

15. SAME—SUMMARY JUDGMENT—ISSUE OF FACT.

*A summary judgment may not be granted once it is concluded
that a genuine and material factual issue is to be determined
(GCR 1963, 117).*

16. SAME—SUMMARY JUDGMENT—POSSIBILITY OF VERDICT FOR EITHER
PARTY.

*The function of the trial judge ends, on consideration of motions
for summary judgment, as soon as he concludes that from the
evidentiary facts a jury could properly return a verdict for
either party (GCR 1963, 117.2[3]).*

Appeal from Court of Appeals, Division 1; Lesin-
ski, C. J., and J. H. Gillis and T. G. Kavanagh, JJ.,
affirming Wayne, Neuenfelt (Lila M.), J.   Submitted
October 3, 1967.   (Calendar No. 2, Docket Nos. 51,-
624, 51,625.)   Decided March 4, 1968.   Rehearing
denied June 10, 1968.

Declaration by Dorothy A. Simerka against Wal-
ter G. Pridemore to recover for loss of support,
services, and consortium of her husband who was
injured in automobile accident by defendant's neg-
ligence.   Declaration by Charles F. Simerka against
Walter G. Pridemore for personal injuries sustained
when the car he was driving was struck by defend-
ant.   Summary judgment for defendant in both

cases. Plaintiffs appeal. Affirmed by an equally divided court.

*Norman P. Ochs* (*Norman L. Zemke,* of counsel), for plaintiffs.

*Eggenberger & Eggenberger,* for defendant.

Brennan, J. (*for affirmance*). This is an appeal from an order of the Court of Appeals affirming summary judgment in the circuit court for the county of Wayne, granted upon defendants' motion under GCR 1963, 117.

The following is a statement of facts gleaned from depositions of both parties and viewed in the light most favorable to the plaintiff. On February 4, 1961, at approximately 12 o'clock midnight, plaintiff, Charles F. Simerka, left the Rouge plant of the Ford Motor Company, Dearborn, Michigan, where he had just completed work on the afternoon shift. He walked out of the plant to an adjacent parking lot, located right outside of gate No. 10. This was a distance of about one-half mile from the actual place of plaintiff's employment. Upon reaching his vehicle in the parking lot, plaintiff removed covers from his windshield and back window and cleaned frost off the side windows. He then proceeded to drive his vehicle through the parking lot in the direction of the exit on his way home. In the process, his vehicle was struck by a vehicle owned and operated by the defendant, Walter G. Pridemore. The defendant was also an employee of the Ford Motor Company and had also just completed work on the afternoon shift. Defendant was also proceeding to leave the parking lot on his way home from work. The accident occurred at about 12:15 a.m.

The parking lot where the accident occurred is fenced off. On this record, it is not known whether

the lot is owned by the Ford Motor Company, but
plaintiff concedes that it is a "Ford Motor Company
parking lot," used by Ford Motor Company em-
ployees, over which control is exercised by Ford
Motor Company plant protection men.   However,
the parking lot is open to the public and no badges
or tickets are required to gain entry.   Anybody can
drive onto the lot.   No one who parks on the lot
is prevented from doing so.   Both the plaintiff and
the defendant regularly parked in said parking lot
while at work.   The plaintiff and the defendant were
both employees of Ford Motor Company and were
employed at the plant near which the accident oc-
cured.   Both the plaintiff and the defendant were in
the parking lot for the purpose of leaving work.

The motion for summary judgment in this case
was granted on the ground that plaintiff's injuries
arose out of and in the course of his employment,
and that the defendant at the time of the accident
was also in the course of his employment, and that
therefore the provisions of the workmen's compen-
sation law barring action based upon the negligence
of a fellow employee come into play.[*]

Defendant contends that this case is governed by
the decision in *Ladner* v. *Vander Band* (1965), 376
Mich 321.   The facts in the *Ladner Case* recited at
page 323 and on page 324 are strikingly similar to
the facts in this case of Simerka.   Two distinctions,
however, are pointed out.   First, it is claimed that
in the *Ladner Case* all the facts upon which decision
was made were stipulated, and this is not so in this
case of Simerka.   While it is true that no agree-
ment or stipulation has been entered into in the in-
stant case, the point is immaterial if we accept, as we
do here, the plaintiff's version of all controverted
points.

---

[*] CL 1948, § 411.1 (Stat Ann 1960 Rev § 17.141).—REPORTER.

The second distinction between *Ladner* and the instant case is the only factual distinction which can be gleaned from comparison of the two cases. In *Ladner*, it was the fact that the parking lot where the accident occurred was owned by General Motors Corporation and maintained by it for the use of its employees. In this case, the parking lot is open to the public. For the purpose of this decision, it cannot be assumed that the lot is owned by the Ford Motor Company, although plaintiff has conceded that it is a Ford Motor Company parking lot, used by Ford Motor Company employees, and that the plant protection men of the Ford Motor Company exercise jurisdiction over the lot by towing vehicles off, by determining where vehicles can be parked, and by making reports of accidents that occur there. The fact that the parking lot in this case was open to the public is immaterial. Employees of supermarkets and shopping centers are not disqualified from workmen's compensation because their employers' places of business are open to the public. Whether or not the employer actually owned the real estate upon which the parking lot was located is also immaterial. Employees are not disqualified from workmen's compensation because their employers are not freeholders. An employer may be purchasing, leasing, or even trespassing upon the premises used for the conduct of his business. The legal status of the employer's possession has no bearing on the right of an employee to collect workmen's compensation or the exclusive nature of that right insofar as it bars tort actions against the employer or a fellow employee. It is sufficient if the parking lot is under such control and supervision of the employer that it forms a part of the employer's premises. In this case, the control and dominion exercised by Ford Motor Company protection men over the parking lot

as conceded by the plaintiff is sufficient that, as a matter of law, we must say the parking lot on which this action occurred was part of the Ford Motor Company premises.

That being so, the case cannot be distinguished from *Ladner*. True it is, that the inferences to be drawn from undisputed facts may be cause for difference among reasonable men. But then, even judges differ on the law when neither facts nor inferences are in dispute. If a court of last resort in a common-law jurisdiction is to be of any value, it must occasionally decide something. It must be able once in a while to conclude that certain facts produce a certain legal result, and that certain other facts are immaterial to that result.

Thousands of workers work at the Ford Motor Company Rouge plant in Dearborn, Michigan. They park in the parking lots provided for them in and around the premises of the plant. No doubt, there are a number of auto accidents in those lots every year. One would suppose that if anything is settled law here in the State of Michigan it would be the question which is before the Court in this case. It must be a constant source of amazement to Ford workers who consult lawyers about auto accidents at the Rouge plant to discover that no two accidents in the lot are covered by the same rules of law. And as a matter of fact, even, a given accident may be both compensable by the employer because it was in the course of employment, and compensable by the other driver because it was not in the course of employment. Conversely, the worker will be amazed to discover that he might lose both cases.

The view that all summary judgments are an abomination is not universal. Without summary judgments, directed verdicts, and the like, it is difficult to imagine how a common-law court can make

substantive case law. The judgments of the courts below should be affirmed, with costs to defendant.

Dethmers, C. J., concurred with Brennan, J.

O'Hara, J. (*for affirmance*). I cannot conceive how upon a trial of the issues in this case, however exhaustive, any issue of material fact could possibly be joined.

Both parties were deposed under a court rule,[1] the stated purpose of which is to determine whether any such issue exists.

I conceive the issues of material fact to be:

(1) Were plaintiff and defendant coemployees? They both said they were employees of the Ford Motor Company working in the same plant on the same shift.

(2) Were they on the premises where their work was performed? As to this question plaintiff was deposed and answered as follows:

"*Q*. (*By Mr. Eggenberger.*) This parking lot where you park your car is a Ford Motor Company parking lot; is it not?
"*A*. Yes.

The defendant was deposed and answered thus:

"*Q*. Where did the accident take place?
"*A*. In the Ford parking lot."

(3) Were they going to or from work within a reasonable time before or after working hours? Plaintiff was deposed and answered:

"*Q*. Let me say this: I understand this accident happened shortly after midnight on February the 4th, 1961?
"*A*. That's right.

---

[1] GCR 1963, 117.2(3).

"*Q.* You were leaving for home from work; were you not?

"*A.* Yes.   *  *  *

"*Q.* What were your hours on the afternoon shift?

"*A.* Four to midnight."

The defendant was deposed and answered:

"*Q.* All right.   This accident happened about twelve, a little after twelve midnight; is that correct?

"*A.* Twelve-fifteen on February the 4th of 1961.

"*Q.* That would be a little after midnight?

"*A.* Yes, a quarter after.

"*Q.* At that time, had you been working on the afternoon shift?

"*A.* Yes.

"*Q.* Got off work at midnight?

"*A.* That's right."

(4) Did the injury to plaintiff arise out of and in the course of his employment?   The involved statute reads:[2]

"Every employee going to or from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, shall be presumed to be in the course of his employment."

I don't like the result in this case because I think plaintiff's claim that he was negligently injured by defendant should be determined by a jury.   However, by so holding here I feel I would vitiate the presumption in this tort case, and I might hereafter be called upon to vitiate it again in a case where an injured employee seeks to invoke it in support of a claim for workmen's compensation under the same circumstances.

Under our decisions, as I read them, I am constrained to join in the affirmance of the trial judge

---

[2] CLS 1961, § 412.1 (Stat Ann 1960 Rev § 17.151).

and the majority of the Court of Appeals as to both plaintiff husband's and his wife's stated causes of action.

Kelly, J., concurred with O'Hara, J.

Black, J. (*for reversal*). Presented is another instance of that which has prolonged appellate contention over what in the third circuit seems to have become a matter of course application of GCR 1963, 116, 117, either or both, to actions in tort for personal injury or death damages. That the practice has been encouraged by schismatic opinions recorded here since Rules 116 and 117 became effective can hardly be doubted. See our latest division, *Weeren* v. *Evening News Association* (1967), 379 Mich 475. The bald fact is that, thus far, the Justices simply cannot reason together on summary judgment ground; hence this separate opinion for reversal of these latest orders granting, and then affirming, quick judgment for a defendant who has pled an affirmative defense he says has been made out, prior to trial, as a matter of law.[1]

These are consolidated suits for negligence arising out of a collision of two automobiles. Excepting that the collision occurred on an employer-owned parking lot that was "open to the public," there would be no question about the plaintiffs' right to proceed to trial of their charge that defendant was guilty of actionable negligence.

Plaintiff Charles F. Simerka and defendant were drivers of the two cars. Both were employees of Ford Motor Company. Whether *both* at the critical

---

[1] This defendant pleads affirmatively, and in such controlling regard has been upheld thus far:

"2. That plaintiff and the defendant were both employees of the Ford Motor Company and that the accident and injuries complained of arose out of and in the course of their employment and as a result thereof plaintiff's claim is barred."

time and place were engaged in the course of their
employment,[2] and whether such automotive collision
arose out of such dual employment, are the critical
questions which the circuit court decided as a sum-
mary matter of law.  On appeal Judges LESINSKI
and T. G. KAVANAGH, of the Court of Appeals, grant-
ed defendant's motion to affirm.  J. H. GILLIS, J.,
dissented on ground that "there is a question of fact
warranting a trial on the merits."  The cases are
here on grant of leave (378 Mich 747).

The facts upon which the trial court assumed to
enter the aforesaid judgments appear in its opinion
as follows:

"From reading the complaints, the answers and
special defenses, the motions for summary judgment
and answers to the summary judgment, and the
pretrial statement which was made by the Hon.
Edward S. Piggins on August 20, 1965, the follow-
ing facts can be determined.  These are two personal
injury cases which have been consolidated and are
to be tried together.  The plaintiff Charles F. Simer-
ka was an employee of the Ford Motor Company and
had finished his day's employment on February 4,
1961 at 12:15 a.m.; that he had gone to his auto-
mobile which was parked in a lot open to the public
and owned and maintained by the Ford Motor Com-
pany; that he was proceeding to drive his automobile
out of this parking lot when this accident occurred.

"The facts show that the defendant was also an
employee of the Ford Motor Company who had
finished his work at the same time and was operating

---

[2] "Another question is raised, however, when one employee injures
a coemployee and the accident can be said not to have arisen during
the course of employment.  What then?  Does the statute bar recovery
in a separate tort action?  Suppose one employee is engaged in his
employer's business at some distance from his employer's premises;
if he is injured by a coemployee who is on vacation, could it be
seriously contested that a tort action could not be maintained?  The
legislature intended no such result.  We conclude therefore that both
employees must be in the course of their employment for the statutory
bar to operate." *Helmic* v. *Paine* (1963), 369 Mich 114, 119.

his car on this same parking lot at the time of this collision.

"The facts further show that both plaintiff Charles F. Simerka and the defendant were employees of the Ford Motor Company and therefore coemployees of the Ford Motor Company and were in the process of going home at the time the accident occurred on the parking lot owned by the Ford Motor Company."

These judgments, based thus, should at the outset be subjected to a few pointed questions.

The first is terse inquiry whether, on supposition that Mr. Simerka and Mr. Pridemore had *both* received disabling injuries as a result of the collision and that *both* had applied for benefits under the workmen's compensation law, we upon the same record would be obliged to hold, as a matter of law (contrary say to findings and decision of the appeal board), (a) that *both* employees were engaged in the course of their employment and (b) that this automotive collision arose "out of" such employment. For answer it need only be said that this Court has not yet gone that far. *Ladner* v. *Vander Band* (1965), 376 Mich 321, does not. See the discussion of this stipulated fact case, and the comparison of these truncated depositions with the complete record of *Hills* v. *Blair* (1914), 182 Mich 20, both *post.*

The next inquiry is more searching, assuming the Court is willing to consider today's question by testing employer Ford's liability in the specific setting of these motions for summary judgment. This Ford-owned area being open to and in use by the public, hence upon the present record being legally analogous to the privately-owned "public area" considered in *Amalgamated Clothing Workers of America, AFL-CIO,* v. *Wonderland Shopping Center, Inc.* (1963), 370 Mich 547, and the sidewalk and pavement of the "company town" of Chickasaw,

*Marsh* v. *Alabama* (1946), 326 US 501 (66 S Ct 276,
90 L ed 265), what about Ford's liability to third
persons, not employees of Ford but lawfully in the
area, should we hold that Messrs. Simerka and
Pridemore were, as a matter of law, still "in the
course" of their employment when the automobiles
driven by them collided and, necessarily further, that
the collision arose "out of" such employment?

To illustrate:

Suppose that Mrs. X, not an employee but walk-
ing toward lawful business with Ford, had been
struck and injured as a result of this automotive
collision and had sued Ford for negligence of both
drivers. Assuming Mrs. X has made out a submis-
sible case of negligence as charged, would not Ford
be entitled at very least to a jury determination of
its liability under *respondeat superior?* Or would
the trial judge be obliged upon request to instruct
the jury that both Simerka and Pridemore at the
time of collision were engaged in the course of
their employment, that the collision was causally
connected with that employment, and that Ford
should be held responsible for their negligence as
charged, should such negligence be found?

The trial court's decision here, if affirmed other
than by equal division, will be pretty matter-of-law
rough on the employers of those hundreds of em-
ployees who, at end of each shift, hurry, if not race,
their cars in the employer's huge parking lot toward
those jammed-up exits. There indeed an employee's
own risk of sustaining or causing injury "out of
automobile travel" has superseded, to some factually
variable extent, the employer-assumed risks of his
employment. As said by the writer in *Howard* v.
*City of Detroit* (1966), 377 Mich 102, 113, 114 (foot-
note):

"If it was right to say *as a matter of law* (*Baas* at 655) that Mrs. Baas' 'accidental injury arose out of automobile travel, not out of the work she was required to do at home', then the fact-finding appeal board was possessed of right to find that Mr. Howard's injury, arising as it did in the course of automobile travel, was causally disconnected with his employment."[3]

To prove the point of vicarious liability compare *Gorman* v. *Jaffa* (1929), 248 Mich 557. There the issue of the defendant employer's responsibility for the negligence of his employee in operating an automobile (belonging to a third person), occurring when as claimed by that defendant the employee "was not acting within the scope of his employment," was held properly submitted to the jury. The employee, a bookkeeper and clerk, was definitely "on the premises" (the building where his work was regularly performed), not on a nearby "open to the public" parking lot. He was starting to drive out of the building for lunch when his negligent act caused the plaintiff's injury. Nonetheless the question of causal "course of employment," and hence the employer's liability, was held to be a question of fact.

Note that the unanimous Court (*Jaffa* at 563) proceeded to apply the rules of *Brink* v. *J. W. Wells Lumber Co.* (1924), 229 Mich 35, to determine whether the defendant employer could by jury verdict be held under the doctrine of *respondeat superior*. Then compare *Brink's* rules with the amendment of 1954. The amendment added, as a paragraph to mature section 1 of part 2 of the workmen's com-

---

[3] The reference here appears in *Baas* v. *Christian Society* (1963), 371 Mich 622, 654, 655; opinion of Justices O'HARA and SMITH. It is time to add that the Court, although dividing equally at the time with respect to the plaintiff's motion for rehearing (*Baas* at 622, 655), came at long last to question its matter of law judgment (that Mrs. Baas' injury did not arise "out of and in the course of her employment") by ordering a rehearing of the *Baas Case*. See order dated December 9, 1966; Supreme Court Journal 26, p 251.

pensation law (CLS 1961, § 412.1 [Stat Ann 1960 Rev § 17.151]),[4] the following:

"Every employee going to or from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, shall be presumed to be in the course of his employment."

The amendment of 1954 came first to judicial consideration when *Dyer* v. *Sears, Roebuck & Company* (1957), 350 Mich 92, and *Freiborg* v. *Chrysler Corp.* (1957), 350 Mich 104, were submitted and simultaneously decided in 1957.

*Dyer* presented a clear "on the premises" situation. The claimant employee started downstairs, in the employer's building where she did typing and filing work, to pay a bill (her mother's) in a nearby office building. The time was the noon hour and she was off duty. She fell on the stairway and sustained what the majority held was a compensable injury.

On the other hand *Freiborg's* situation was that of an employee on his way to work. He parked his car in the employer's parking lot "about 200 yards from the entrance by which plaintiff gained admission to the plant," and started to walk toward the place of his work. While walking in the lot he was struck by an automobile and held, by the appeal board, to have been compensably injured.

---

[4] Section 1 from the beginning has included the pivotal "arising out of and in the course of his employment" provision of the act. Of that section the Court said, in *Hills* v. *Blair*, 182 Mich 20, 25:

"Under the provisions of this act, only that employee is entitled to compensation who 'receives personal injuries arising out of and in the course of his employment.' It is to be borne in mind that the act does not provide insurance for the employed workman to compensate any other kind of accident or injury which may befall him. The language of the Michigan compensation law is adopted from the English and Scotch acts on the same subject, and, in harmony with their interpretations, has been construed by this Court, in *Rayner* v. *Sligh Furniture Co.* (1914), 180 Mich 168, as meaning that the words 'out of' refer to the origin, or cause of the accident, and the words 'in the course of' to the time, place, and circumstances under which it occurred."

The factual distinction between the two cases did not affect the result of either, the Court having affirmed awards of compensation in favor of both claimants. The distinction did, nevertheless, give rise to two interpretive points made by the minority which the majority did not dispute.

One was that the amendment of 1954 by its terms applies only to an employee going to or from his work while on the premises "where his work is to be performed." Justice Carr, supported by Justices Sharpe and Kelly, concluded that "It will be noted that in no case does the presumption apply unless the employee is 'on the premises where his work is to be performed'." Such was the reason for conclusion of the three Justices (*Freiborg* at 115):

"As applied to the facts in this case the language finally adopted in the amendment, as enacted, would have reference to the Mack street plant, and not to the parking lot. At the time of his injury plaintiff was not on the premises where his work was to be performed."

The other point, made by Justices Carr and Sharpe in *Dyer,* was that the amendment supplied no presumption that an employee's injury arose "out of" his employment. The two Justices said (*Dyer* at 103):

"Her injury, as a matter of fact, did not arise out of her employment. The statute is silent as to any presumption, rebuttable or otherwise, in this respect."

As against all this the majority view was simply that the 1954 amendment did no more than lend support to the original "out of and in the course of" rules set forth in *Haller* v. *City of Lansing* (1917), 195 Mich 753 (LRA 1917E, 324) and *Brink, supra.* The majority proceeded to apply those rules, appli-

cable as they were and yet are to space and proximity
as well as time, "irrespective of applicability to this
case of that which became effective, as an amenda-
tory statute [the amendment of 1954], after Esther
Dyer's injury was sustained." (*Dyer* at 96, echoed
by the same Justices in *Freiborg* at 112.) Thus the
presently relevant posture of section 1 of part 2
remains, today, one of full effect thereunder of the
interpretive rules set forth in *Haller* and *Brink*.
The amendment of 1954 did not supplant or other-
wise modify those rules. It simply buttressed them
by means of a statutory presumption of "reasonable"
beginning and continuity of the "in the course of"
requirement of said section 1; that only.

The rules set forth in *Haller* and *Brink* include
(*Brink* at 37, 38) the thorough reasoning which ap-
pears in the very first "on the premises" decision
which this Court handed down after the workmen's
compensation law went into effect in 1912, referring
to *Hills* v. *Blair, supra,* decided July 24, 1914.[5]   For
the promised comparison of *Hills* with the record
before us, consider first these passages appearing in
*Hills* at 27, and then at 28, 29:

"In applying the general rule that the period of
going to and returning from work is not covered by
the act, it is held that the employment is not limited
by the exact time when the workman reaches the
scene of his labor and begins it, nor when he ceases,
but includes a reasonable time, space, and opportu-

---

[5] See *Husted* v. *Consumers Power Company* (1965), 376 Mich 41,
54, laying down again the rule of statutory construction which our
reporter summarized by syllabus 9. That rule is directly applicable
here. Every Justice participating in the opinion of *Hills* v. *Blair*
was a member of the Court when the workmen's compensation law
was debated and enacted in 1912, Justice KUHN excepted. As for
Justice KUHN, he was attorney general of Michigan at the same time
and came to the Court September 6, 1912 (171 Mich iii).

It is suggested, respectfully again, that all 8 Justices participating
in the decision of *Hills* were in better position to know purposefully
and apply intelligently the everlasting "out of and in the course of"
test, to an "on the premises" case, than are we in this year 1968.

nity before and after, while he is at or near his place
of employment. One of the tests sometimes applied
is whether the workman is still on the premises of
his employer. This, while often a helpful consid-
eration, is by no means conclusive. A workman
might be on the premises of another than his em-
ployer, or in a public place, and yet be so close to
the scene of his labor, within its zone, environments,
and hazards, as to be in effect at the place and under
the protection of the act, while, on the other hand,
as in case of a railway stretching endless miles
across the country, he might be on the premises of
his employer and yet far removed from where his
contract of labor called him. The protection of the
law does not extend, except by special contract, be-
yond the locality, or vicinity, of the place of labor.
*    *    *

"When the employee dies at his post of duty, a
presumption may reasonably be entertained that he
was then performing his duty and engaged in the
work for which he was employed, from which a
causal relation between his employment and the acci-
dent may be inferred; but it is shown here that de-
ceased left the locality and sphere of his employ-
ment at a time when work was suspended, that he
was doing nothing within the scope of his employ-
ment, was not under the direction or control of his
employer, and went away for purposes of his own,
going where and as he pleased. Though he was
traveling on his employer's premises when injured,
he was then 950 feet away from where any duty in
the line of his employment called him, and had
selected his own route."

It cannot be claimed that *Hills* has been overruled,
directly or by implication. (That may be due to
the noteworthy fact that the Court found, contrary
to view of the industrial accident board, that com-
pensation should be *denied* on ground that the dece-
dent had, as a matter of law, entered another realm
of legal course and causation by going clearly be-

yond the "locality" or "proximity" of his employ-
ment.)  *Hills* is direct authority for holding that
the instant summary motions should be denied.
There the employee-decedent proceeded on foot less
than a thousand feet from the place of his work to
the scene of his fatal injury, being at all times on
the employer's premises.  Here the employee-plain-
tiff walked an approximate half mile from his place
of work.  Then he removed snow protective guards
he had placed over the front and rear glass of his
car and drove in the parking area a not clearly dis-
closed distance to the point of collision.  From the
time he commenced driving, at very least, the stat-
utory presumption of "reasonable time" had spent its
force and Mr. Simerka's status under the work-
men's compensation law depended upon applicabil-
ity of the necessarily flexible rules collected in *Brink*
at 37, 38.

The deposition of Mr. Pridemore does not show
how far he walked prior to getting into his car.  It
does show that he drove "about 300 feet" to the
place of the collision.  The depositions in other re-
spects are deficient of those essential factual details
which, either upon trial of damage suits as here or
administrative hearing of claims for compensation,
are fully brought out.  Defendant, bearing both the
burden of proving his quoted affirmative defense and
the burden of persuasion that summary action was
in order, has failed in each respect.

The 1954 amendment seems to have been taken
below as conclusively determinative of the "course
of employment" status of an employee, where in any
instance the presumption declared thereby has some
evidentiary bearing upon the issue.  This was matter
of law error.  Whether the presumption applies at
all depends upon the setting of facts which provides
its admission to consideration in the first place, and
the presumption weakens unto legal extinction the

farther an own-mission-bound employee progresses from his work station, both in point of time and space.[6] The amendment *presumes* as to "time thereafter," but it furnishes no presumption as to "space" or "proximity." That is where the rules set forth in *Brink* come into play. *Brink's* rules invariably, when applicable to presented circumstances, present questions of fact for the triers of fact in compensation cases and for the triers of fact in *respondeat superior* cases. To test this conclusion, array the facts of *Hills* (also *Guastelo* v. *Michigan Central R. Co.*, 194 Mich 382) with the facts of *Brink* and *Jaffa*.

In our books thus far we have six of these so-called parking lot cases. They correspond generally but not precedentially with this Simerka Case. The six are *Daniel* v. *Murray Corporation of America* (1949), 326 Mich 1; *Gonter* v. *L. A. Young Spring & Wire Corporation* (1950), 327 Mich 586; *Freiborg* v. *Chrysler Corporation* (1957), 350 Mich 104; *Helmic* v. *Paine* (1963), 369 Mich 114; *Brooks* v. *Fields* (1965), 375 Mich 667, and *Ladner* v. *Vander Band* (1965), 376 Mich 321. Because the facts were stipulated in *Ladner*, rather than litigated, I lay that one aside for the moment and turn initially to the preceding five.

In *Daniel* it was established, and found as a fact, that the parking lot in which the claimant was injured had been provided by the defendant employer "for the convenience and exclusive use of those employed in its tool and die division."

---

[6] See discussion of various types of presumptions in *Cebulak* v. *Lewis*, 320 Mich 710; also in the exhaustive analysis provided by *In re Wood Estate* (1965), 374 Mich 278, particularly the quotation (p 289) from *Tot* v. *United States* (1943), 319 US 463, 467, 468 (63 S Ct 1241, 1245, 87 L ed 1519, 1524) :

"Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience." (Citing numerous authorities, footnote 9.)

In *Gonter* the workmen's compensation commission found (pp 588, 589):

"It is clear that the parking lot is maintained for the mutual benefit of both employees and employer. It is a private lot solely under the control of defendant who limits its use to employees, guests and business visitors."

In *Freiborg* it was shown and found that the defendant employer "maintained the lot exclusively for automobile parking by its employees while working in that plant."

In *Helmic* a disclosed question of fact, that is, whether the plaintiff pedestrian-employee was struck in the employer's parking lot or, as claimed by the defendant motorist-employee, on the street "just outside the entrance to the parking lot," required reversal of summary judgment for the defendant employee.

In *Brooks* it was shown and found that the automotive collision which resulted in the plaintiffs' suits for damages arose in "a private parking lot maintained by the Ternstedt Division, General Motors Corporation."

All of these cases are readily distinguishable from what is presently before us.

Now for *Ladner*. As noted above, the parties determined to and did stipulate all of the facts upon which decision was made. Counsel thereby eliminated all issues of fact as well as the usual process of drawing permissible inferences from testified facts, and called upon the Court for application of legal principles to such stipulated facts.[7]  One of

---

[7] I agree with Justice SOURIS that facts testified to in negligence actions warrant no summary action or peremptory instruction just because they are *undisputed*. Justice T. M. KAVANAGH and I said so six years ago, citing what we thought were respectable authorities headed by *Detroit & M. R. Co. v. Van Steinburg* (1868), 17 Mich 99 and *Sioux City & P. R. Co. v. Stout*, 84 US (17 Wall) 657 (21 L ed 745). See *Nabozny v. Hamil*, 361 Mich 544 (dissent).

the facts stipulated was that "The parking lot where the accident occurred is owned by General Motors Corporation and is maintained by it for the use of its employees." No claim was made, as controverted by the present defendant and confirmed thus far below, that the employer's lot was "open to the public." I do not read *Ladner* as precedent for any case save where identical ultimate facts are either stipulated or shown in evidence with corresponding limitations upon judicial scrutiny thereof.

Of all employee parking lot cases preceding Simerka, the only one which involved a collision of two employee-driven automobiles, on as claimed a "company" parking lot, was *Brooks* v. *Fields*. There, the action having been by Ternstedt employee Dolores Brooks (with separate consequential action by her husband) against two other Ternstedt employees, summary judgments for the defendants were granted below and reversed on appeal. I would rule the same way here by holding that the critical questions of time and proximity, applicable as they separately are to Mr. Simerka and Mr. Pridemore, require a trial for their proper solution. The "reasonable" conclusion of mixed fact and law is simply this: When an employee stops walking from his place of work at the end of his regular work period and gets behind the wheel of an automobile to start home, or for some other exclusively personal destination, from that time on all that may be said of his "in the course of" status is that it dwindles rapidly. Why? Because the causative risk of injury to others as well as himself changes immediately from those which attend the risks of his employment and the regular course thereof. There is perforce some point of time and space when and where an employee leaving by motor car for the day (or night) changes his legal position to that of others bearing no relation to that employee's employer, no matter whether

at that point his car is or is not "on the premises."
So far that point has not been identified for final
judgment as claimed by this mover for summary
judgment.

The remaining question tests the claimed inde-
pendent right of plaintiff Dorothy A. Simerka, wife
of plaintiff Charles F. Simerka, to sue defendant
for consequential damages arising out of the latter's
negligence as charged by her husband. The trial
court ruled:

"In the case of the plaintiff wife, Dorothy A.
Simerka, our Supreme Court has held that a wife's
cause of action is barred by the workmen's compen-
sation act, and the sole remedy of these plaintiffs is
under the workmen's compensation act."

*Balcer* v. *Leonard Refineries, Inc.,* (1963), 370
Mich 531 and *Moran* v. *Nafi Corporation* (1963), 370
Mich 536, to which reference in above regard was
probably made, were suits brought for loss of con-
sortium by the wives respectively of employees in-
jured "out of and in the course of" their employ-
ment. The employer in each instance was the
defendant. In both cases the action was held barred
by section 4 of part 1 of the workmen's compensation
law (CL 1948, § 411.4 [Stat Ann 1960 Rev § 17-
.144]).

The employer not being defendant here, neither
case applies for the same reason Justice O'HARA
gave in *Moran* at 537 for distinguishing *Montgomery*
v. *Stephan* (1960), 359 Mich 33. Whether this
plaintiff wife may maintain her independent action
turns not upon any provision of the compensation
law but upon the common-law test, that is, whether
in the primary action an actionable wrong was com-
mitted by the same defendant. The subject was
fully explored in *Arritt* v. *Fisher* (1938), 286 Mich
419, with conclusion reached that where the one

negligently injured or damaged is entitled to recover, then the consequentially injured plaintiff may also recover; otherwise not.

I would adhere to the rule of *Arritt* and hold that Mrs. Simerka's derivative cause as alleged depends upon the yet unknown success or failure of her husband's primary cause.

The judgment of the panel below should be reversed with directed remand for entry of orders denying defendant's motions for summary judgment. Plaintiffs should have costs of all three courts.

T. M. KAVANAGH and ADAMS, JJ., concurred with BLACK, J.

SOURIS, J. (*for reversal*). I agree with Mr. Justice BLACK that these summary judgments should be reversed. Reversal is required by our regard for the plaintiffs' right to jury trial of this automobile negligence case. It was not judicially appropriate for the circuit judge, nor is it appropriate for appellate judges, to determine, on motions for summary judgment, that at the time of collision plaintiff driver and defendant were, in fact, engaged in the course of their employment for the same employer and that, in fact, the collision arose out of that employment. These are *ultimate fact conclusions* that a jury someday might reach on the basis of the *evidentiary facts* currently of record in this case. But, as Justice BLACK points out, a jury properly could reach contrary *ultimate fact conclusions* from those *evidentiary facts*.

The distinction made between evidentiary facts and ultimate facts is crucial to the grant or denial of summary judgment as allowed by GCR 1963, 117.2 (3) in cases where "there is no genuine issue as to

any material fact". The material fact to which reference is made in the rule is the ultimate fact issue upon which a jury's verdict must be based. For example, in a contract case the material fact, or ultimate fact, as distinguished from the evidentiary fact, is the meeting of the minds, rather than merely that the parties conferred; the payment and receipt of consideration, not just that money passed hands; the breach of a material condition, rather than just that defendant delivered the goods on a day after the date promised. For further example, in a negligence case the material fact, or ultimate fact, as distinguished from the evidentiary fact, is that plaintiff was within a zone of foreseeable danger, rather than merely that plaintiff was walking along the road on which defendant's car was traveling; that defendant's negligence, if found, was the proximate cause of the collision, not just that there was an impact between plaintiff and defendant's car; that plaintiff was contributorily negligent, rather than just that he was walking on the paved portion of the highway. In short, the difference between evidentiary fact and material fact, or ultimate fact, is the difference between the raw data admissible in evidence and the inferences or conclusions of facts essential to the claim or defense which properly may be drawn or reached by a jury from such data.

Summary judgments continue to give our bench and bar more difficulty than they should. Our reports, and the Court of Appeals', disclose the extent of this difficulty and, as well, its source. Summary judgment cases, like those dealing with the propriety of directed verdicts, and judgments *non obstante veredicto,* too frequently require appellate court reversal of judgments entered prior to jury verdict or in contravention of jury verdicts because lawyers and judges alike fail to discern the difference be-

tween evidentiary facts on the one hand and conclusions of ultimate fact on the other hand.

Early in the judicial history of this State, in *Detroit & Milwaukee R. Co.* v. *Van Steinburg* (1868), 17 Mich 99, Chief Justice Cooley, in discussing whether negligence ever can be determined as a matter of law in a jury case, but in a manner equally applicable to judicial determination of any issue of ultimate fact, put the matter this way, at pp 122, 123:

"It is a mistake, therefore, to say, as is sometimes said, that when the facts are undisputed the question of negligence is necessarily one of law. This is generally true only of that class of cases where a party has failed in the performance of a clear legal duty. When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence can not be determined until one or the other of those conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they can not be decided upon by the court. Negligence can not be conclusively established by a state of facts upon which fair-minded men may well differ. In *Ireland* v. *Oswego R. R. Co.,* 13 NY 533, Judge Johnson, speaking upon this subject, says: 'The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as matter of law. On the contrary, it is almost always to be deduced as an inference of fact, from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their force and weight considered. *In such case the inference can not be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout.* Presumptions of fact, from their very nature, are not strictly objects of legal science, like

presumptions of law. That the care exercised by the plaintiff at the time of the injury, and the negligence of the defendant, were both questions for the jury to determine, can not admit of any doubt.' [Citations omitted.]" (Emphasis added.)

The *Van Steinburg Case* was cited as a principal authority in the unanimous opinion of the United States Supreme Court in *Sioux City & Pacific R. Co.* v. *Stout* (1874), 84 US (17 Wall) 657 (21 L ed 745). That case, too, involved the propriety of determining negligence as a matter of law, but the principles involved in determining whether a case should go to the jury or be decided by a judge on the evidentiary facts are applicable whatever the issue of ultimate fact may be and whenever the determination must be made, either on motion for summary judgment, motion for a directed verdict, or motion for judgment *non obstante veredicto.*

"It is true, in many cases, that where the facts are undisputed the effect of them is for the judgment of the court, and not for the decision of the jury. This is true in that class of cases where the existence of such facts comes in question rather than where deductions or inferences are to be made from the facts. If a deed be given in evidence, a contract proven, or its breach testified to, the existence of such deed, contract, or breach, there being nothing in derogation of the evidence, is no doubt to be ruled as a question of law. In some cases, too, the necessary inference from the proof is so certain that it may be ruled as a question of law. If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this action, it may be ruled as a matter of law that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives. So if a coachdriver intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law. On the

other hand, if he had placed a suitable distance between his coach and the precipice, but by the breaking of a rein or an axle, which could not have been anticipated, an injury occurred, it might be ruled as a question of law that there was no negligence and no liability. But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to these intermediate cases that the opposite rule prevails. Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.

"In no class of cases can this practical experience be more wisely applied than in that we are considering. We find, accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us, that although the facts are undisputed it is for the jury and not the judge to determine whether proper care was given, or whether they establish negligence.

"In Redfield on the Law of Railways, it is said: 'And what is proper care will be often a question of law, where there is no controversy about the facts. But ordinarily, we apprehend, where there is any testimony tending to show negligence, it is a question for the jury. *Quimby* v. *R. Co.* 23 Vt 387; *Pfau* v. *Reynolds,* 53 Ill 212; *Patterson* v. *Wallace,* 1 McQ H L Cas. 748; 28 Eng L & E 48.

"In *Patterson* v. *Wallace,* there was no controversy about the facts, but only a question whether certain facts proved established negligence on the one side, or rashness on the other. The judge at the trial withdrew the case from the jury, but it was held in the House of Lords to be a pure question of fact for the jury, and the judgment was reversed.

"In *Mangam* v. *Brooklyn Railroad,* 38 NY 445, the facts in relation to the conduct of the child injured, the manner in which it was guarded, and how it escaped from those having it in charge, were undisputed. The judge at the trial ordered a nonsuit, holding that these facts established negligence in those having the custody of the child. The court of appeals of the State of New York held that the case should have been submitted to the jury, and set aside the nonsuit.

"In *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, the cases are largely examined, and the rule laid down, that when the facts are disputed, or when they are not disputed, but different minds might honestly draw different conclusions from them, the case must be left to the jury for their determination." 84 US (17 Wall) 657, 663–665 (21 L ed 745, 749).

The principles announced in the last century in *Van Steinburg* and *Sioux City* have not been disavowed by this Court and they should be rooted firmly in the trial practice of this jurisdiction; but that they are not is disclosed by our official reports. Perhaps the current rash of judicially unmerited final judgments before jury verdict or *non obstante*

*veredicto* charitably can be attributed to professional uncertainty resulting from our recent revision of our general court rules in 1963 which consolidated our former practice on motions to dismiss for failure to state a cause of action or for failure to state a valid defense with our former motion for summary judgment where the claim was that absent a disputed fact *issue,* summary judgment was merited. But that explanation is too facile. The fact is that final judgments before jury verdict or *non obstante veredicto* were being granted, and sometimes affirmed by this Court, even before the 1963 general revision of our court rules with a frequency and in a manner that demonstrated disregard of the fundamental principles wisely established in *Van Steinburg* and *Sioux City.* See *Romero* v. *King* (1962), 368 Mich 45.

From time to time members of this Court have attempted to restore order out of chaos in this important procedural field of the law, but without lasting effect. See the discussions of this issue in *Miller* v. *Miller* (1964), 373 Mich 519, opinion by Souris, J.; *Durant* v. *Stahlin* (*Appeal in re King, Bashara, Merrell, and Waldron*) (1964), 374 Mich 82, opinion by Black, J.; *Durant* v. *Stahlin* (*Appeal in re Van Dusen, Elliott, Romney*) (1965), 375 Mich 628, opinions by Adams and Souris, JJ.; *Zamler* v. *Smith* (1965), 375 Mich 675, opinions by O'Hara and Souris, JJ.; *Green* v. *Wallace* (1965), 376 Mich 113, dissenting opinion by Black, J. The effort continues.

Testimony was taken by deposition and offered in support of the motions for summary judgment in this case of Simerka. It is claimed that the depositions disclose that there are no controverted facts. What this means is that there is no conflict in the testimony; that there is no dispute concerning the evidentiary facts; that all of the witnesses agree about what happened, how it happened, when it

happened, and where it happened. However, it does not follow from the absence of dispute over the evidentiary facts that "There is no genuine issue as to any material fact", to use the language of GCR 1963, 117.2(3), and, therefore, that the cases properly were dismissed by summary judgments. All parties can testify alike to the evidentiary facts, indeed they can stipulate to them, as was done in *Ladner* v. *Vander Band* (1965), 376 Mich 321, but if the evidentiary facts were such that a jury could draw conflicting inferences therefrom and could reach conflicting conclusions of ultimate fact therefrom, summary judgment nonetheless would be inappropriate. See *Durant* v. *Stahlin* (1965), 375 Mich 628.

When a circuit judge, considering a motion for summary judgment under GCR 1963, 117.2(3), determines that a jury's verdict properly could go either way on the evidentiary facts then disclosed, whether disputed or undisputed, and even when stipulated, he cannot enter summary judgment without usurping the exclusive role assigned to the jury. That was precisely the situation in the circuit court in this case, as Justice BLACK discusses in his opinion.

The depositions in this case disclose that in some respects evidentiary facts may be undisputed. That evidentiary circumstance, however, is irrelevant to the question whether the circuit judge was entitled to conclude as a matter of law, on motions for summary judgment, that the plaintiff driver and the defendant were, in fact, engaged in the course of their employment for the same employer and that, in fact, the collision arose out of that employment thereby requiring summary dismissal of the suits by virtue of CLS 1961, § 413.15 (Stat Ann 1960 Rev § 17.189) and *Sergeant* v. *Kennedy* (1958), 352 Mich 494. The only relevant inquiry, on these motions for summary judgment, should have been whether the evidentiary facts proffered by deposition were such that from

them a jury properly could have found either for the plaintiffs or for the defendants, as to the material fact issues, the ultimate facts. The circuit judge's task ends, on consideration of motions for summary judgment filed under GCR 1963, 117.2(3), as soon as he concludes that from the evidentiary facts a jury properly could return a verdict for either party.

For the foregoing reasons, I join Justice Black in voting for reversal and remand to the trial court for further proceedings. I would assess costs against the defendant.