QUEEN v GENERAL MOTORS CORPORATION

1. WORKMEN'S COMPENSATION—EARLY ARRIVAL.

Workmen's compensation claimant's arrival at his employer's parking lot, where his injuries occurred, approximately 22 to 32 minutes before he was scheduled to begin work on the afternoon shift was reasonable where his arrival time was not inconsistent with his arrival patterns that he had developed over the previous four months of his employment on that shift, because an employer would not wish all employees to arrive at precisely the same time and thus employees must exercise their individual judgments regarding their times of arrival on their employer's premises.

2. WORKMEN'S COMPENSATION—PARKING LOT INJURY.

Workmen's compensation claimant's injury which occurred when he was on a nonwork-related ride on a fellow employee's motorcycle about the employer's parking lot before reporting to his work station, arose out of and in the course of his employment where the claimant arrived on the lot within a reasonable time before starting time and his injury was not the result of intentional and willful misconduct (MCLA 412.1, 412.2).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 November 2, 1971, at Lansing. (Docket No. 11275.) Decided February 24, 1972. Leave to appeal denied, 387 Mich 780.

Lawrence E. Queen presented his claim for workmen's compensation against General Motors Corporation. Workmen's Compensation Appeal Board

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Workmen's Compensation § 214 *et seq.*

affirmed award. Defendant appeals by leave granted. Affirmed.

*Walter J. Barkey,* for plaintiff.

*Munroe & Nobach, P. C.,* for defendant.

Before: DANHOF, P. J., and BRONSON and TARGONSKI,* JJ.

TARGONSKI, J. Plaintiff was employed by the defendant on the afternoon shift. Defendant provided a parking lot for its employees. On April 30, 1969, plaintiff arrived at the parking lot early. He parked his car and began talking to some fellow employees when one of such other employees arrived and offered him a ride on his motorcycle through the company lot. Plaintiff accepted. He estimated that the motorcycle reached a speed of 45 or 50 miles per hour before colliding with an automobile which was entering the parking lot. As a result of injuries sustained in this collision, plaintiff has been unable to work.

Plaintiff made application for benefits under the Workmen's Compensation Act. As a result of a hearing before a referee, an award was made to plaintiff for payment of medical and hospital expenses, plus compensation from date of injury and continuing until further order of the bureau. The Workmen's Compensation Appeal Board unanimously affirmed the award of compensation by order and opinion dated February 10, 1971. Defendant, upon leave granted, appealed from such award contending that an employee, who arrives at his employer's premises unreasonably early, and is there-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

after injured during a deviation from his workbound journey, is not entitled to workmen's compensation benefits.

This appeal questions the applicability of the Workmen's Compensation Act to this injury in view of MCLA 412.1; MSA 17.151:

"An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is at the time of such injury subject to the provisions of this act, shall be paid compensation in the manner and to the extent hereinafter provided, or in case of his death resulting from such injuries such compensation shall be paid to his dependents as hereinafter defined. The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death.

"Every employee going to or from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, shall be presumed to be in the course of his employment."[1]

The period of time between plaintiff's arrival at work and the start of his shift was unreasonably long according to the defendant's contention. Defendant further contends that plaintiff's ride on a co-worker's motorcycle through defendant's parking lot constituted a deviation sufficient to take the plaintiff out of the course of his employment. Our analysis of these two issues follows.

We must note, before embarking upon a review of the problem involved herein, that this Court's review is limited:

---

[1] This statute has been repealed and has been replaced by MCLA 418.301; MSA 17.237(301).

"Review by an appellate court of a factual determination made by the Workmen's Compensation Appeal Board is limited to any inquiry whether there is any evidence whatever to support the determination of the appeal board. *Clark* v *Apex Foundry, Inc,*[2] *supra;* Const. 1963, art 6, § 28." *Williams* v *Chrysler Corp,* 29 Mich App 398, 401–402 (1971).

The appeal board, in its opinion on the question of whether plaintiff was on the parking lot at a reasonable time before his scheduled working hours, held as follows:

"The record establishes that plaintiff had arrived at the parking lot sufficiently early but I do not find that to be of particular significance. Would the employer expect the employee to arrive late or cut the amount of arrival so fine that all employees would arrive at precisely the same moment?' Thus, there must exist some individual exercise of judgment in permitting employees to enter the parking lot and plant prior to the start of each shift."

While the appeal board did not specifically state that plaintiff's arrival was within a reasonable time before working hours, it can certainly be inferred from the above paragraph that the board did find, as fact, that the arrival of plaintiff was within reasonable bounds.

Even though there exists a difference of opinion between the two parties here as to the actual time of plaintiff's arrival at the parking lot, there was sufficient testimony elicited at the hearing to substantiate the appeal board's determination that plaintiff did arrive within a reasonable time. Plaintiff has contended throughout these proceedings that he arrived in the parking lot at approximately 4:15 p.m. Defendant has argued that the time of

[2] 7 Mich App 684 (1967).

plaintiff's arrival was not 4:15 p.m., but at some-
time prior to that time, conceivably before 4 p.m.
Plaintiff was to begin his afternoon shift at 4:42
p.m.    Plaintiff gave testimony that it took him ap-
proximately three minutes to walk from the parking
lot to his work station, and that if he had arrived
at the parking lot at 4:30 p.m. he could have been at
his station on time.

It was also brought out that plaintiff had been on
the afternoon shift for a period of four months, and
that he had to be in the lot at 4:15 p.m. the day of
the accident because he did not leave the house until
4 p.m. when his friend was driving, and his friend
was driving that week.

Finally, the only other evidence introduced bear-
ing on the time of the accident was a medical or in-
jury report which was prepared at the Buick Hos-
pital at the time the accident occurred.    On this
report, the hour of the accident has been filled in to
read 4:15 p.m.    From the testimony, it appears
plaintiff must have arrived in the parking lot ap-
proximately 22–32 minutes before he was scheduled
to begin work.

The appeal board's reasoning that defendant
would not wish all of its employees to arrive at pre-
cisely the same time, and therefore there must exist
some individual exercise of judgment, seems sound.
While we do not know why plaintiff chose to arrive
at the parking lot at the time he did, this is not in-
consistent with the patterns that he had developed
over the previous four months of his employment on
the afternoon shift.    Also, our Supreme Court has
held that a 25-minute period is within the statutory
reasonable time.    *Ladner* v *Vander Band,* 376 Mich
321 (1965).    Thus, we find that there was evidence
presented before the appeal board to support its de-

termination that plaintiff had arrived within a reasonable time before working hours.

Having determined that the accident occurred within a reasonable time before the working hours, we are next faced with the problem whether the accident can be said to have arisen out of, and in the course of, the plaintiff's employment. A review of some of the leading cases which have been decided during the past few years, and which have dealt with similar questions, will aid in resolving this issue. One of the first of these cases is *Dyer* v *Sears, Roebuck & Co,* 350 Mich 92 (1957). In *Dyer,* the plaintiff was on her lunch hour and had eaten lunch on the employer's premises. After consuming her lunch, she started to leave the employer's premises to do a personal errand and while still on the premises she fell, injuring herself. In reviewing the compensation award, the Court found that the plaintiff's injury arose out of and in the course of her employment. The same result was achieved in *Freiborg* v *Chrysler Corp,* 350 Mich 104 (1957). There, the employer owned a parking lot 200 yards from the entrance to its plant. To get a parking place, plaintiff had to arrive early, and so arrived 45 minutes before work began. While walking to the entrance of the plant, plaintiff was struck by an auto driven by a fellow employee. The Court held that going to and from work, while on the employer's premises, is an incident of employment, as is the parking of an automobile on the employer's lot.

In *Crilly* v *Ballou,* 353 Mich 303 (1958), two teenaged boys were employed by a contractor who did roofing and siding work. From time to time the boys would throw shingles and nails at one another in youthful exuberance until on one occasion plaintiff lost an eye as a result of this behavior. In

holding that the injury arose out of and in the course of employment, the Court said, pp 325–326:

"But what was hired, a boy or a robot? The answer is simple and it points to one solution: The employer hired a human being, with all his reactions and his imperfections. Going to the job does not sanctify him. At home or at work, give a man a curse and he will anger, give a teen-age boy an apple core and he will throw it. The workman 'brings to his work,' as we said, dissenting in *Salmon v Bagley Laundry Company,* 344 Mich 471, 487 [1955], 'all of his human characteristics, his frailties as well as his virtues. We cannot, either actually or legally, make the precise excisions of the surgeon. We cannot remove from him, and put to work for his employer, only his strength. His strength goes hand in hand with his temper. It is impossible for us to employ only the grace and charm of the female worker. We hire as well her lively curiosity. We collect these people by the hundreds, even thousands, and we put them to work, sometimes amid noise and vibration, sometimes in smoke and steam. They get tired. They get hungry. They get thirsty. They have to go to the toilet. The day wears on and tempers grow short. Relief is sought in horseplay. Trips to the water cooler and coffee urn grow in number and duration. This is the course of employment. "Course of employment" is not a sterile form of words. It is descriptive of life in the industrial age. These human deviations from the course of the automation do not suspend the employer-employee relationship. They are not departures from employment, but the very substance of it. They are the inevitable concomitants of the working relationship and conditions which produce the product. Its costs must reflect the fatigue, the irritations, and sometimes the blood that went into it. It is here that we find the explanation for the horseplay cases, the curiosity cases, and the assault cases.' "

The employee in *Lasiewicki v Tusco Products Co*, 372 Mich 125 (1963), left the building of her employer on her noon hour for the purpose of placing a cardboard on the windshield of her car to protect it from ice. She then decided to go to the food center, lying east of the employer's building, for an apple. While walking towards the food center, she slipped and fell. Note, this injury occurred while the employee was on her lunch hour and while she was going next door for an apple. The Court found that the injury arose out of and in the course of employment. This same result was reflected in *Ladner v Vander Band, supra,* and in *Simerka v Pridemore*, 380 Mich 250 (1968). The plaintiff in *Ladner* was struck by an auto driven by a co-employee, while both were on the parking lot furnished for the use of the employees by their common employer, five minutes after plaintiff left work and twenty-five minutes before the co-employee was scheduled to commence work. In *Simerka* the plaintiff was also struck by an automobile driven by a co-employee while both were on the parking lot controlled by their common employer.

This issue was most recently decided in *Fidelity & Casualty Co of New York v DeShone*, 384 Mich 686 (1971). There, the employee was injured while standing alongside his place of employment waiting for a fellow employee to open the store. The fellow employee had been given keys to the marketplace by the owner and was to open the store so that the employees could enter. Upon arriving at the store in the employer's car on the occasion in question, the fellow employee borrowed a third employee's car keys to see if they would fit the employer's delivery car. When the fellow employee tried this other key in the ignition of the employer's car, the car lurched forward and pinned the employee

against the store building. As in the previous decisions, the Court held that the injury arose out of and in the course of his employment. The Court said, p 692:

"The fact that the defendant's act of trying someone else's keys in his [the employer's] automobile did not fulfill any purpose of his employer does not affect his status. To be in the course of employment, employees are not required to do only those acts that are part of their assigned work."

. Reviewing the facts in the instant case in light of the judicial interpretations in the previous cases cited hereinabove, we find that the plaintiff's injury arose out of and in the course of his employment even though the injury was occasioned by a non-work-related motorcycle ride about the employer's parking lot prior to actually reporting at his work station, an incident not dissimilar to those in the prior cases cited, particularly *Crilly v Ballou, supra,* and *Fidelity & Casualty Co of New York v DeShone, supra.* The injury here was not the result of intentional and wilful misconduct which is excluded from compensation by the act itself, MCLA 412.2; MSA 17.152;[3] it arose from the acts of the employees on the employer's premises while waiting, within a reasonable time, for their work shift to begin. As the Court pointed out in *Crilly v Ballou, supra,* man is not a robot, and it must be realized that he has many imperfections. This finding is fully in accord with the rule of law announced in *Whetro v Awkerman,*[4] 383 Mich 235, 242–243 (1970), in which the Court stated:

---

[3] This statute has been repealed and replaced by MCLA 418.305; MSA 17.237(305).
[4] This rule of law applies only to *Whetro,* and all claims for compensation arising after March 12, 1970.

"We hold that the law in Michigan today no longer requires the establishment of a proximately casual connection between the employment and the injury to entitle a claimant to compensation. * * * They [cases] have brought the law in Michigan to the point where it can be said today that if the employment is the occasion of the injury, even though not the proximate cause, compensation should be paid."

Thus, upon the facts we hold that the plaintiff's injury falls within MCLA 412.2; MSA 17.152,[5] and the compensation awarded is hereby affirmed.

BRONSON, J., concurred.

DANHOF, J., concurred in the result.

---

[5] *Supra*, note 1.